UNITED LEASING CORPORATION AND SHIELD FAMILY PARTNERSHIP, III, PLAINTIFFS v. JOSEPH F. GUTHRIE AND KELLY PITTMAN, DEFENDANTS

No. COA08-169

(Filed 16 September 2008)

**1. Evidence— lay opinion—value of converted inventory**

The trial court did not abuse its discretion in a conversion claim by admitting lay opinion testimony about the value of the inventory of a closed business. The deposition testimony of one witness tended to show knowledge of the property and some basis for his opinion, and the testimony of another was specifically disregarded in the court's determination of damages.

**2. Damages and Remedies— default judgment—assertions about damages—disregarded**

Defendant's assertions about damages in a fraud and conversion claim were disregarded where a default judgment had been entered and the assertions went to the merits and not the amount of recovery.

**3. Damages and Remedies— evidence—admitted allegations**

Competent evidence in the record (including admitted allegations in the complaint) supported the trial court's findings as to damages in a conversion and fraud action, and those findings supported the trial court's conclusion of law and the ensuing judgment.

**4. Judgments— findings and conclusion—adoption of party's proposal**

The trial court in a conversion and fraud action did not err by adopting plaintiffs' proposed findings and conclusions that were supported by competent evidence.

**5. Pleadings— acting in concert not alleged—joint and several liability not found**

The trial court did not err by failing to hold defendant Pittman jointly and severally liable for conversion of inventory during the closing of a business, and properly concluded that plaintiffs were entitled to only nominal damages from Pittman, where plaintiffs did not allege that Pittman acted in concert with others while converting the inventory.

Appeal by defendant Joseph F. Guthrie and cross-appeal by plaintiffs from order and judgment entered on or after 28 August 2007 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 27 August 2008.

*Lewis & Roberts, P.L.L.C., by John S. Austin, for plaintiffs.*

*Nicholls & Crampton, P.A., by Kevin L. Sink, and Steven S. Bliss, for defendant Joseph F. Guthrie.*

TYSON, Judge.

Joseph F. Guthrie ("Joseph Guthrie") appeals judgment entered on remand from this Court, which awarded United Leasing Corporation and Shield Family Partnership, III (collectively, "plaintiffs") treble damages based upon their unanswered allegations of conversion, fraud, and unfair or deceptive acts or practices. Plaintiffs cross-appeal an order entered, which awarded plaintiffs nominal damages against Kelly Pittman. We affirm.

UNITED LEASING CORP. v. GUTHRIE

[192 N.C. App. 623 (2008)]

## I. Background

Plaintiffs filed a complaint against Joseph Guthrie, Tami Guthrie, Judy Guthrie, Kelly Pittman, Lance Pittman, Joseph Guthrie Family Trust, Growth Opportunities Inc., and Showcase America Inc. (collectively, "defendants") based upon a series of allegedly improper business transactions. Plaintiffs alleged claims for conversion, fraud, unfair or deceptive acts or practices, and civil conspiracy. Plaintiffs also sought contribution and indemnity.

The facts leading to this action are as follows: on 8 October 1998, United Leasing Corporation ("ULC") loaned $500,000.00 to United American Company ("American"), a company under the operation and control of Joseph Guthrie. In exchange, ULC received a promissory note and a security interest in American's inventory. In November 1998, Joseph Guthrie used Kelsie Properties, LLC to obtain a lease with Parker-Raleigh Development XX ("Parker-Raleigh") for a storefront location for American. The lease granted Parker-Raleigh a security interest in the inventory already subject to the security interest in favor of ULC. Although Kelsie Properties, LLC was owned in equal portions by Shield Family Partnership, III and Joseph Guthrie Family Trust, Joseph Guthrie failed to inform Shield Family Partnership, III of this transaction. During the course of the lease, Joseph Guthrie failed to pay the rent due in a timely manner and often paid with checks drawn on accounts with insufficient funds.

On 24 November 1999, ULC and American entered into an agreement for the peaceful repossession of the collateral. Within this agreement, Joseph Guthrie, on behalf of American, admitted that it had defaulted on its promissory note dated 8 October 1998. The parties agreed that the value of the inventory would be maximized if American continued "to conduct business and make sales in the ordinary course of business." ULC further agreed to "allow such a continuation of the conduct of business and sales . . . on the condition that [American] pay only its necessary operating expenses from the proceeds of such sales and, thereafter, on a weekly basis, turn over to [ULC] all net proceeds of such sales." Joseph Guthrie admittedly failed to comply with this agreement.

On 23 May 2000, ULC "purchased" American's entire inventory pursuant to its interest under the promissory note and security agreement. At that time, Joseph Guthrie "absconded with [the] valuable inventory, converting such inventory to his own use or to the use of Growth Opportunities, Inc. and/or Showcase America, Inc." Joseph

Guthrie authorized his agents to transport portions of the inventory from Raleigh to his other stores in Richmond, Virginia and Wilmington, North Carolina in order to "shield, hide and launder the inventory and proceeds from the inventory's sale."

On 26 May 2000, Parker-Raleigh enforced a lockout provision contained in their lease with Kelsie Properties d/b/a American. Parker-Raleigh subsequently demanded ULC pay $37,499.37 in back rent prior to the release of its inventory. ULC filed suit to recover its inventory and Parker-Raleigh responded by filing counterclaims against ULC and third-party actions against Joseph Guthrie, Kelsie Properties, and Edward Shield, the President of ULC, alleging fraud, negligent misrepresentation, and unfair or deceptive acts or practices. Parker-Raleigh sought to obtain a judgment in an amount in excess of $1,000,000.00. To settle the matter, ULC agreed to pay Parker-Raleigh $360,000.00 on behalf of Kelsie Properties and themselves.

On 16 April 2003, plaintiffs filed their complaint against defendants. On 17 November 2003, the trial court granted defendants' motion to dismiss for lack of personal jurisdiction over defendants Tami Guthrie, Judy Guthrie, and the Joseph F. Guthrie Family Trust, but denied it as to Joseph Guthrie, Kelly Pittman, and Lance Pittman.

On 16 March 2004, the clerk of court filed an entry of default against the remaining defendants for failure to file a responsive pleading within the time allotted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(a). On 2 April 2004, defendants filed a motion to set aside the entry of default. On 30 April 2004, the trial court entered an order denying defendants' motion and granting plaintiffs' motion for default judgment in the amount of $515,000.00 plus court costs. Defendants appealed to this Court. See United Leasing Corp. v. Guthrie, 179 N.C. App. 656, 635 S.E.2d 75 (2006) (unpublished).

Defendants argued the trial court erred by failing to set aside the entry of default and entering default judgment against them. This Court affirmed the entry of default, but held the trial court abused its discretion by entering default judgment in the amount of $515,000.00 because it "relied exclusively on allegations made in plaintiff[s'] complaint in determining the amount of damages." On 3 October 2006, this Court remanded this case to the trial court for a hearing on damages. After the initial appeal, plaintiffs settled their claims against Lance Pittman, leaving Joseph Guthrie and Kelly Pittman as the active defendants.

UNITED LEASING CORP. v. GUTHRIE

[192 N.C. App. 623 (2008)]

On 16 July 2007, Joseph Guthrie and Kelly Pittman filed a motion *in limine* to exclude documents and information not disclosed in discovery and to exclude lay opinion testimony regarding the value of the inventory. The trial court took this motion under advisement. On 23 July 2007, the trial court conducted a hearing on damages in accordance with this Court's previous opinion. Based upon the evidence submitted, the trial court found: (1) plaintiffs failed to show they suffered any injury or damage to which they would be entitled to contribution; (2) Joseph Guthrie had converted $150,000.00 of plaintiffs' inventory; (3) Joseph Guthrie's fraudulent misrepresentations damaged plaintiffs in the amount of $500,000.00; and (4) Joseph Guthrie's actions constituted unfair or deceptive acts or practices pursuant to N.C. Gen. Stat. § 75-1.1.

The trial court concluded that the damages of $150,000.00 for conversion and $500,000.00 for fraud were "overlapping" and declared the total judgment to be $500,000.00. The trial court then trebled plaintiffs' damages. Judgment was entered against Joseph Guthrie in the amount of $1,500,000.00. The trial court entered a separate order regarding Kelly Pittman, which concluded that plaintiffs were entitled to recover nominal damages from her in the amount of $25.00. Joseph Guthrie appeals and plaintiffs cross-appeal.

## II. Issues

Joseph Guthrie argues the trial court erred by: (1) admitting the lay opinion testimony of Lance Pittman and Marcus Barnes to establish plaintiffs' damages for conversion and fraud and (2) adopting verbatim the proposed findings of fact and conclusions of law forwarded by plaintiffs' counsel. Joseph Guthrie further argues plaintiffs failed to prove the amount of their damages with reasonable certainty and that the judgment entered against him is excessive and bears no relationship to plaintiffs' evidence.

On cross-appeal, plaintiffs argue the trial court erred by failing to hold Kelly Pittman jointly and severely liable for the conversion of plaintiffs' inventory.

## III. Joseph Guthrie's Appeal

### A. Motion *in Limine* to Exclude Lay Opinion Testimony

Joseph Guthrie argues the trial court abused its discretion in admitting lay opinion testimony from Lance Pittman ("Pittman") and Marcus Barnes ("Barnes") regarding the value of the converted inventory.

### 1. Standard of Review

"We review a trial court's rulings on motions *in limine* and on the admission of evidence for an abuse of discretion." *State v. Hernendez*, 184 N.C. App. 344, 348, 646 S.E.2d 579, 582 (2007) (citations omitted). Under an abuse of discretion standard, we reverse a trial court's decision "only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Gibbs v. Mayo*, 162 N.C. App. 549, 561, 591 S.E.2d 905, 913 (citation and quotation omitted), *disc. rev. denied*, 358 N.C. 543, 599 S.E.2d 45 (2004).

### 2. Analysis

### i. Pittman's Testimony

[1] Joseph Guthrie argues that Pittman's testimony was inadmissible because (1) he was not qualified as an expert witness; (2) he was merely a "project manager" and not the "owner" of the inventory; and (3) he did not know the year, make or model of any of the inventory. We disagree.

The measure of damages for wrongful conversion is the fair market value of the chattel at the time and place of conversion, plus interest. *Russell v. Taylor*, 37 N.C. App. 520, 524, 246 S.E.2d 569, 573 (1978) (citations omitted). This Court has held that "[l]ay opinions as to the value of [] property are admissible if the witness can show that he has knowledge of the property and some basis for his opinion." *Whitman v. Forbes*, 55 N.C. App. 706, 711, 286 S.E.2d 889, 892 (1982) (citing *Wyatt v. Railroad*, 156 N.C. 307, 315, 72 S.E. 383 (1911); *Power & Light Co. v. Merritt*, 50 N.C. App. 269, 273, 273 S.E.2d 727, 731, *disc. rev. denied*, 302 N.C. 220, 276 S.E.2d 914 (1981)).

Here, Pittman testified by videotaped deposition that he had worked for various companies owned by Joseph Guthrie, including American. Pittman held the position of "project manager" and "helped set up new stores whenever [Joseph Guthrie] acquired a company, or [found] a new building, or moved inventory around to the stores for sales, helped hire managers, sales people, [and] set up dumpster companies." Pittman also testified to his familiarity with the inventory at the various store locations and its pricing.

In mid 2000, part of Pittman's job duties was to assist with the "shutdown" of American's Raleigh location. Pittman loaded inventory from the Raleigh store into a twenty-four foot box truck approximately five to six times. One truck load of inventory was taken to

**UNITED LEASING CORP. v. GUTHRIE**

[192 N.C. App. 623 (2008)]

Wilmington, North Carolina and the remaining truck loads to Richmond, Virginia. Based on his experience working for American, Pittman estimated the aggregate value of the inventory moved from the Raleigh store amounted to $150,000.00.

Pittman's deposition testimony tended to "show that he ha[d] knowledge of the property and some basis for his opinion" regarding the value of said property at the time of its conversion. *Id.* at 711, 286 S.E.2d at 892. Joseph Guthrie has failed to show the trial court abused its discretion in admitting Pittman's lay opinion testimony. Joseph Guthrie also failed to produce any evidence tending to vary or contradict Pittman's valuation of the converted inventory.

### ii. Barnes's Testimony

Joseph Guthrie also argues the trial court abused its discretion by admitting Barnes's lay opinion testimony regarding the value of the converted inventory. We disagree.

Barnes was contracted by Joseph Guthrie to appraise the inventory of the American stores in February 2000. Barnes requested American provide him with an aging report, cost data, and retail values. Barnes was to "make a physical inspection of the Norfolk store, spot-check the inventory and then provide a force-liquidation value on all of the locations based on this inventory which they were to provide." Based on Barnes's inspection, the estimated value of the inventory located at American's Raleigh store was $770,315.85 as of 17 February 2000. Barnes's appraisal reports were submitted to the trial court.

At the hearing, Joseph Guthrie's counsel specifically objected to this testimony as irrelevant and further argues this assertion on appeal. Presuming *arguendo* Barnes's testimony is irrelevant, Joseph Guthrie has failed to show its admittance constituted prejudicial error. *See Steely v. Lumber Co.*, 165 N.C. 27, 31, 80 S.E. 963, 965 (1914) ("Verdicts and judgments should not be lightly set aside upon grounds which show the alleged error to be harmless or where the appellant could have sustained no injury from it.").

Here, the trial court disregarded Barnes's testimony in its determination of damages. In its order, the trial court specifically concluded:

Joseph Guthrie represented to Marcus [Barnes], as of February 17, 2000, that the inventory in the Raleigh store had a value of

$770,315.85. This value closely resembles the sum of the two values shown on the inventory lists for Raleigh and Durham that were attached to the UCC-1s filed on November 3, 1998. *This Court finds it improbable, even under the best circumstances, that the inventory ever had such a value; instead, Joseph Guthrie used these figures to entice financing.*

(Emphasis supplied). The trial court then concluded, based on Pittman's deposition testimony, that value of the converted inventory amounted to $150,000.00. Because Barnes's testimony and appraisal value was specifically disregarded in the trial court's determination of damages, Joseph Guthrie has failed to show the admittance of Barnes's testimony was prejudicial. *Id.* This assignment of error is overruled.

## B. Damages

Joseph Guthrie argues plaintiffs failed to prove the amount of any damage with reasonable certainty. We disagree.

### 1. Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (citation and quotation omitted), *disc. rev. denied*, 356 N.C. 434, 572 S.E.2d 428 (2002). The trial court's conclusions of law are reviewable *de novo* on appeal. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

### 2. Analysis

[2] At the outset, we note that "[t]he effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint, and is prohibited from defending on the merits of the case." *Hartwell v. Mahan*, 153 N.C. App. 788, 791, 571 S.E.2d 252, 253-54 (2002) (citation and quotation omitted), *disc. rev. denied*, 356 N.C. 671, 577 S.E.2d 118 (2003). A defendant's "only recourse is to show good cause for setting aside the default and, failing that, *to contest the amount of the recovery.*" *Id.* at 790-91, 571 S.E.2d at 253 (citation and quotation omitted) (emphasis supplied). "It is a well-established principle of law that proof of damages must be made with reasonable certainty." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 546, 356 S.E.2d

578, 585 (1987) (citation omitted). However, "proof of an absolute mathematical certainty is not required." *CDC Pineville, LLC v. UDRT of N.C., LLC*, 174 N.C. App. 644, 655, 622 S.E.2d 512, 520 (2005) (citation and quotation omitted), *disc. rev. denied*, 360 N.C. 478, 630 S.E.2d 925 (2006).

Here, Joseph Guthrie asserts "six (6) independent reasons why plaintiffs' evidence failed to prove damages with reasonable certainty[,]" including the following:

> if Pittman retrieved the "inventory" from Raleigh prior to 23 May 2000, plaintiffs suffered no harm because ULC did not own the "inventory" until 23 May 2000.
>
> . . . .
>
> [O]n December 15, 1999, ULC/Shield directed Joseph Guthrie to retrieve the inventory from [American's] stores and transport it to Richmond, Virginia. Plaintiffs could not have suffered any harm from retrieval and transportation of the "inventory" because Joseph Guthrie was acting with authority and at the direction of Shield. . . .
>
> [P]laintiffs' failure to prove *when* the "inventory" was converted also dooms their damage claim because the documentary and unchallenged evidence establishes that ULC abandoned any and all interest in any "inventory" in "July or August 2000." . . .
>
> [A]lthough the superior court found that "Joseph Guthrie, contrary to his representations in the Peaceful Repossession Letter, sold the inventory for his own benefit", [sic] plaintiffs offered no evidence of a single sale of any "inventory" after November 24, 1999—the date of the Peaceful Repossession Letter—in support of their claim of damages.

Because these assertions attempt to contest the merits of the case and not the amount of recovery, they are not properly before us and we do not address them. *Hartwell*, 153 N.C. App. at 791, 571 S.E.2d at 253-54.

[3] Joseph Guthrie's remaining contentions are as follows: first, he argues that because it was "stipulated" that the inventory shipped to Wilmington was not converted, the trial court was left to guess the value of the converted inventory versus the non-converted inventory. However, the record contains no such stipulation. Pittman's lay opin-

ion testimony was sufficient to establish the aggregate value of the converted inventory.

Second, Joseph Guthrie argues "the superior court's judgment of fraud is 100% predicated upon a series of bizarre *non sequitors* and speculations[.]" Joseph Guthrie asserts the record is devoid of any evidence to support the trial court's conclusion of law that plaintiffs were entitled to $500,000.00 in damages based upon Joseph Guthrie's fraudulent misrepresentations. We disagree.

In its order, the trial court made the following findings of fact:

> In this case, [ULC] had provided Joseph Guthrie and his company, [American], a loan of $500,000 to purchase inventory located in Durham, Raleigh and Wilmington, North Carolina. There is no dispute that [ULC] wired money and that [American] received the inventory. On November 24, 1999, Joseph Guthrie signed a Peaceful Repossession Letter. In that letter, Joseph Guthrie admitted that [American] defaulted on the $500,000 promissory note. He further agreed to personally guarantee its payment. Joseph Guthrie also made a number of misrepresentations in which he promised, both individually and on behalf of [American], to sell the inventory and provide the proceeds to [ULC] on a weekly basis. He did not. . . .

> But for Joseph Guthrie's misrepresentations, [ULC] would have had the opportunity to secure all of the inventory, to avoid a default with the landlord and to sell the inventory in a more orderly fashion. As stated above, although the Court does not find it credible that the inventory had a value of $770,315.85, it does find competent evidence that [ULC] lent $500,000 to [American] and that [American] defaulted on that note.

The trial court concluded that based on the foregoing findings, plaintiffs were damaged in the amount of $500,000.00. Competent evidence in the record, including the admitted allegations in plaintiffs' complaint, support the trial court's findings of fact. These findings support the trial court's conclusion of law and ensuing judgment. *Cartin,* 151 N.C. App. at 699, 567 S.E.2d at 176. This assignment of error is overruled.

## C.  Excessive Judgment

Joseph Guthrie argues the trial court erred by entering a judgment against him that was "excessive," "unfounded," and bears no

relationship to plaintiffs' damages. Joseph Guthrie reiterates the same argument as we decided immediately preceding this section. For the reasons stated above, this assignment of error is overruled.

## D. Judgment Entered

**[4]** Joseph Guthrie argues the trial court committed reversible error when it adopted verbatim the findings of fact and conclusions of law proposed by plaintiffs' counsel. We disagree.

This Court has repeatedly held that "[w]here the trial court adopts verbatim a party's proposed findings of fact, those findings will be set aside on appeal only where there is no competent evidence in the record to support them." *Weston v. Carolina Medicorp, Inc.*, 102 N.C. App. 370, 381, 402 S.E.2d 653, 660 (citations omitted), *disc. rev. denied*, 330 N.C. 123, 409 S.E.2d 611 (1991); *see also Rierson v. Commercial Service, Inc.*, 116 N.C. App. 420, 422, 448 S.E.2d 285, 287 (1994). Here, competent evidence in the record supports the trial court's findings of fact and its findings of fact support its conclusions of law. This assignment of error is overruled.

## IV. Plaintiffs' Cross-Appeal

**[5]** On cross-appeal, plaintiffs argue the trial court erred by failing to hold Kelly Pittman jointly and severally liable for the conversion of plaintiffs' inventory. We disagree.

The trial court found that Kelly Pittman converted the property of ULC as a matter of law. The trial court's finding of fact was predicated upon the following allegation contained in plaintiffs' complaint deemed admitted after default:

41. Upon information and belief, since 23 May 2000, Joseph Guthrie, Judy Guthrie, Tami Guthrie, Kelly Pittman and Lance Pittman have converted the inventory to their own use. The Guthries and the Pittmans employed the use of their companies, Growth Opportunities, Inc., Showcase America, Inc. and the Pittman's company, Etc., in order to shield, hide and launder the inventory and proceeds from the inventory's sales.

The trial court further found the allegation in the complaint insufficient to establish Kelly Pittman "acted in concert" in committing the conversion and only awarded plaintiffs nominal damages. Plaintiffs have failed to show any error in the trial court's analysis.

"It is a generally accepted rule that where two or more persons unite or *intentionally act in concert in committing a wrongful act, or participate therein with common intent,* they are jointly and severally liable for the resulting injuries." *Garrett v. Garrett,* 228 N.C. 530, 531, 46 S.E.2d 302, 302 (1948) (citations omitted) (emphasis supplied). However, no allegations in plaintiffs' complaint tend to show Kelly Pittman acted in concert with others while converting the property of ULC. *Id.* The preceding allegation is only sufficient to establish Kelly Pittman converted ULC's inventory. Plaintiffs' complaint does contain the following allegations in their fourth cause of action, civil conspiracy:

53. Joseph Guthrie, Tami Guthrie, Judy Guthrie and the Joseph Guthrie Family Trust engaged in conspiracy to defraud [ULC] and Kelsie Properties.

54. Joseph Guthrie, Tami Guthrie, Judy Guthrie employed the use of the Joseph Guthrie Family Trust, Growth Opportunities, Inc. and Showcase America, Inc. to further their plan to defraud and convert goods belonging to [ULC].

55. As co-conspirators, Joseph Guthrie, Tami Guthrie, Jud[y] Guthrie and the corporate defendants Growth Opportunities, Inc. and Showcase America, Inc. are jointly and severally liable for the damages herein stated.

56. As a direct cause of the conspiracy between Joseph Guthrie, Tami Guthrie, Jud[y] Guthrie, Growth Opportunities, Inc. and Showcase America, Inc., [ULC] was damaged in an amount in excess of $440,000.

Noticeably absent from these allegations is any reference to Kelly Pittman. Plaintiffs have failed to show the trial court erred when it concluded plaintiffs were only entitled to recover nominal damages against Kelly Pittman. This assignment of error is overruled.

## V.  Conclusion

Joseph Guthrie failed to show the trial court abused its discretion in admitting lay opinion testimony from Lance Pittman and Marcus Barnes regarding the converted inventory's value. Competent evidence in the record, including the admitted allegations in plaintiffs' complaint, supports the trial court's conclusion of law that plaintiffs were entitled to $500,000.00 in damages based upon Joseph Guthrie's fraudulent misrepresentations. This evidence supports the findings of

fact and conclusions of law proposed by plaintiffs' counsel in its order and adopted by the trial court.

Plaintiffs failed to allege Kelly Pittman acted in concert in converting the inventory of ULC. The trial court properly concluded plaintiffs were entitled to recover only nominal damages against Kelly Pittman. The trial court's judgment entered against Joseph Guthrie and order regarding Kelly Pittman are affirmed.

Affirmed.

Judges CALABRIA and ELMORE concur.