IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-849

Filed: 1 August 2017

Sampson County, No. 15 CVS 688

VAN-GO TRANSPORTATION, INC., Plaintiff,

v.

SAMPSON COUNTY, SAMPSON COUNTY BOARD OF COMMISSIONERS and ENROUTE TRANSPORTATION SERVICES, INC., Defendants.

Appeal by plaintiff from order entered 12 May 2016 by Judge Gale M. Adams in Sampson County Superior Court. Heard in the Court of Appeals 9 February 2017.

*The Charleston Group, by R. Jonathan Charleston, Jose A. Coker, and Quintin D. Byrd, for plaintiff-appellant.*

*Daughtry Woodard Lawrence & Starling, by W. Joel Starling, Jr., for defendant-appellee Sampson County.*

*Crossley McIntosh Collier Hanley & Edes, PLLC, by Norwood P. Blanchard, III, for defendant-appellee EnRoute Transportation Services, Inc.*

DAVIS, Judge.

This appeal requires us to once again examine the issue of when a defendant is entitled to recover on an injunction bond previously posted by the plaintiff after the plaintiff voluntarily dismisses the lawsuit. Plaintiff Van-Go Transportation, Inc. ("Van-Go") appeals from the trial court's order awarding damages to Sampson County (the "County") and EnRoute Transportation Services, Inc. ("EnRoute") (collectively "Defendants"). Because we conclude that the trial court properly ruled that Van-Go's

voluntary dismissal was equivalent to an admission that it wrongfully enjoined Defendants, we affirm.

## Factual and Procedural Background

From 1997 until 2013, the County contracted with EnRoute for the transportation of area Medicaid patients to and from appointments for medical services. During the period from July 2013 to June 2015, the County contracted with Van-Go to provide these transportation services. In February 2015, the County issued a Request for Proposals ("RFP") seeking bids from vendors to provide these services for the period between July 2015 and June 2017.

Among other requirements, the RFP instructed each bidder to (1) identify its insurer and show that it possessed a certain amount of insurance coverage; and (2) state the fixed cost per mile that it would charge the County for provision of the transportation services. Van-Go and EnRoute each submitted proposals that the County deemed timely and responsive to the RFP.

Van-Go's bid identified its insurer and level of coverage and stated that its fixed cost per mile of service was $1.74. EnRoute's proposal did not identify its insurance carrier but stated that it would obtain the required insurance coverage if awarded the contract. In addition, it stated that its cost per mile of service was $1.54 "[p]lus a fuel surcharge of $.01 per mile for each $.05 increase over $3.95 per gallon (based on average daily price at Go Gas-Clinton)." On 6 April 2015, the Sampson

County Board of Commissioners voted to award the Medicaid transportation services contract (the "Contract") to EnRoute based upon the terms specified in its bid.

On 29 June 2015, Van-Go filed its initial complaint against Defendants in which it requested monetary damages and injunctive relief for alleged violations of N.C. Gen. Stat. § 143-129 (which governs the procedure for awarding public contracts); 5 C.F.R. §§ 2635.101 and 2635.702 (which address conflicts of interest in contracts involving federal monies); and the due process clauses of the federal and state constitutions. These claims were premised upon Van-Go's contentions that the Contract should not have been awarded to EnRoute because (1) EnRoute's proposal was not responsive to the RFP in that it both failed to demonstrate that EnRoute had procured the required insurance coverage and did not provide a fixed cost per mile; and (2) a conflict of interest existed between the owners of EnRoute and the Director of the Sampson County Department of Social Services, who participated in the County's consideration of the bids.

The complaint included a request for a temporary restraining order ("TRO") pursuant to Rule 65 of the North Carolina Rules of Civil Procedure to enjoin EnRoute from performing under the Contract and to allow Van-Go to extend its then-existing contract with the County by continuing to provide transportation services at the cost-per-mile rate of $1.85 as specified in that agreement. A TRO hearing was held in Sampson County Superior Court on 29 June 2015 after which Judge W. Allen Cobb,

Jr. issued a TRO granting Van-Go its requested relief pending the outcome of a preliminary injunction hearing. The TRO further directed Van-Go to post an injunction bond in the amount of $25,000.

Defendants subsequently filed a motion to dissolve the TRO on 13 July 2015. Following a hearing, Judge Charles H. Henry issued an order on 20 July 2015 denying Van-Go's request for a preliminary injunction and granting Defendants' motion to dissolve the TRO. In its order, the court determined that Van-Go had not shown a likelihood of success on the merits because, *inter alia*, (1) EnRoute's bid substantially conformed to the specifications of the RFP; and (2) Van-Go failed to show that a conflict of interest had tainted the bidding process.

Following the entry of this order, Defendants removed the case to the United States District Court for the Eastern District of North Carolina based upon the federal questions presented in Van-Go's complaint. Van-Go subsequently filed an amended complaint that did not contain any claims arising under federal law. Based upon the lack of a federal question in the amended complaint, the federal court granted Van-Go's motion to remand the case to Sampson County Superior Court on 29 July 2015.

On 17 August 2015, EnRoute filed a motion to dismiss Van-Go's amended complaint in Sampson County Superior Court. On 10 December 2015 — while EnRoute's motion to dismiss was pending — Van-Go filed a voluntary dismissal of its

lawsuit without prejudice pursuant to Rule 41 of the North Carolina Rules of Civil Procedure. Van-Go subsequently filed a motion on 1 February 2016 requesting the release of the $25,000 injunction bond it had posted in connection with the TRO. On 4 February 2016, EnRoute submitted an objection to Van-Go's motion along with a motion of its own seeking an award of damages in the full amount of the bond on the ground that EnRoute had been wrongfully enjoined. On 18 March 2016, the County filed a similar motion.

A hearing was held before the Honorable Gale M. Adams on 21 March 2016. Judge Adams issued an order on 12 May 2016 denying Van-Go's motion for release of the bond and awarding Defendants the proceeds of the bond. In its order, the trial court allocated $15,993.57 of the $25,000 to EnRoute and $9,006.43 to the County. Van-Go filed a timely notice of appeal from this order.

## Analysis

Van-Go raises several issues on appeal. First, it asserts that the $25,000 injunction bond should have been released to Van-Go. Alternatively, it asserts that even if EnRoute was entitled to recover some portion of the bond, EnRoute failed to provide sufficient evidence of the damages it had incurred so as to warrant the trial court's award of $15,993.57. Finally, Van-Go argues that the trial court erred in awarding any amount of damages to the County because all monies at issue belonged to the State rather than the County.

## I. Determination that Defendants Were Wrongfully Enjoined

Pursuant to Rule 65(c), a party who obtains a TRO or preliminary injunction must post a security bond. *See* N.C. R. Civ. P. 65(c) (providing that, with limited exceptions, "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the judge deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."). In reviewing a trial court's judgment concerning the disposition of an injunction bond, "[w]e consider whether the trial court's findings of fact and conclusions of law are sufficient to support the judgment." *Allen Indus., Inc. v. Kluttz*, __ N.C. App. __, __ 788 S.E.2d 208, 209 (2016).

In its 12 May 2016 order, the trial court made the following findings of fact in determining that Van-Go was not entitled to the return of its $25,000 injunction bond:

> 26. On December 10, 2015, [Van-Go] filed a Notice of Voluntary Dismissal without prejudice pursuant to Rule 41(a) of the North Carolina Rules of Civil Procedure. The Notice of Dismissal was unconditional, in that it was not stipulated as pursuant to Rule 41(a)(1)(ii) of the North Carolina Rules of Civil Procedure.
>
> . . . .
>
> 30. The Court finds that, as a result of the TRO entered on June 29, 2015, the County and Enroute were restrained from performing under the Contract, which would have taken effect on July 1, 201[5], for a period of twenty (20) days.

The trial court proceeded to enter the following pertinent conclusion of law:

4. The Notice of Voluntary Dismissal without prejudice filed by [Van-Go] in this matter on or about December 10, 2015, which was unstipulated, is equivalent to a finding that the County and Enroute were wrongfully restrained by the entry of the TRO on June 29, 2015.

(Citation omitted.)

In determining whether a party has been wrongfully enjoined, courts must analyze the issue in a manner "consistent with the very purpose of the bond[,] which is to require that the plaintiff assume the risks of paying damages he causes as the price he must pay to have the extraordinary privilege of provisional relief." *Indus. Innovators, Inc. v. Myrick-White, Inc.*, 99 N.C. App. 42, 50, 392 S.E.2d 425, 431 (citation and quotation marks omitted), *disc. review denied*, 327 N.C. 483, 397 S.E.2d 219 (1990); *see also Leonard E. Warner, Inc. v. Nissan Motor Corp. in U.S.A.*, 66 N.C. App. 73, 76, 311 S.E.2d 1, 3 (1984) ("The purpose of the security requirement is to protect the restrained party from damages incurred as a result of the wrongful issuance of the injunctive relief." (citation omitted)).

It is well established that "no right of action accrues upon an injunction bond until the court has finally decided that plaintiff was not entitled to the injunction, or until something occurs equivalent to such a decision." *M. Blatt Co. v. Southwell*, 259 N.C. 468, 471, 130 S.E.2d 859, 861 (1963) (citation and quotation marks omitted). The defendant has the burden of proof on the issue of whether it is entitled to recover under the bond. *Id.* at 473, 130 S.E.2d at 862.

In the present case, Defendants do not contend that the trial court expressly determined that Van-Go had not been entitled to the 29 June 2015 TRO.[1] Rather they contend that Van-Go's voluntary dismissal of its lawsuit was equivalent to a decision by the trial court that Van-Go was not entitled to the TRO.

The seminal case on this issue is *Blatt,* in which our Supreme Court articulated the following rule:

> *[T]he voluntary and unconditional dismissal of the proceedings by the plaintiff is equivalent to a judicial determination that the proceeding for an injunction was wrongful*, since thereby the plaintiff is held to have confessed that he was not entitled to the equitable relief sought.
>
> When, however, the dismissal of the action is by an amicable and voluntary agreement of the parties, the same is not a confession by the plaintiff that he had no right to the injunction granted, and does not operate as a judgment to that effect.

*Id.* at 472, 130 S.E.2d at 862 (internal citations and quotation marks omitted and emphasis added). Thus, *Blatt* distinguished between, on the one hand, a plaintiff's voluntary dismissal of an action without conditions and, on the other hand, a plaintiff's voluntary dismissal that is conditioned upon an agreement between the plaintiff and the defendant. *Blatt* makes clear that the former category of voluntary

---

[1] We note that a trial court's subsequent refusal to grant a preliminary injunction to a plaintiff does not, in itself, constitute a determination that the defendant was wrongly enjoined by the earlier issuance of a TRO. *See Blatt*, 259 N.C. at 471, 130 S.E.2d at 861 (holding that trial court's determination that plaintiff was not entitled to continuation of TRO did not constitute ruling that TRO had been wrongfully issued given that trial court failed to make any "recital, finding or adjudication that plaintiff was not entitled to the temporary restraining order during the period it was in effect").

dismissals entitles the defendant to recovery on the injunction bond whereas the latter category does not.

Here, there was no "amicable" or "voluntary" agreement between Van-Go, the County, and EnRoute at the time Van-Go dismissed its lawsuit. Instead, Van-Go voluntarily, without any promise, consideration, or involvement of Defendants, dismissed its lawsuit "as to all defendants" on 10 December 2015. Due to the voluntary, unilateral dismissal of its lawsuit, Van-Go "is held to have confessed that [it] was not entitled to the equitable relief sought" by the 29 June 2015 TRO. *Id.*

North Carolina courts have recognized one narrow exception to *Blatt's* general rule that a voluntary and unconditional dismissal is deemed to be an admission by the plaintiff that it wrongfully enjoined the defendant. This exception applies in instances in which a plaintiff dismisses a claim that has become legally moot. In *Democratic Party of Guilford County v. Guilford County Board of Elections*, 342 N.C. 856, 467 S.E.2d 681 (1996), the plaintiffs filed suit to compel the Guilford County Board of Elections to extend voting hours on Election Day in November 1990. The trial court issued a TRO directing the board to keep polling places open for an additional hour. *Id.* at 858, 467 S.E.2d at 682-83. Approximately one month later, the board moved to vacate the TRO and sought damages for having been wrongfully enjoined. *Id.* at 858, 467 S.E.2d at 683. A few hours later, the plaintiffs filed a voluntary dismissal of the action. The trial court denied the board's request for

damages on the grounds that the TRO was no longer in existence and the board had failed to demonstrate that it was wrongfully enjoined. *Id.* at 859, 467 S.E.2d at 683.

On appeal to the Supreme Court, the board cited *Blatt* to support its contention that the plaintiffs' dismissal of their action "constituted a *per se* admission of wrongful restraint which automatically entitled [the board] to damages." *Id.* at 861, 467 S.E.2d at 684. The Court rejected this argument, explaining that the plaintiffs' dismissal of their action was in effect a "legal nullity" given that their complaint "sought no relief other than the temporary restraining order, and that order expired, at the latest, ten days after [the trial court] entered it." *Id.* at 862, 467 S.E.2d at 685.

Another application of the mootness exception occurred in *Allen Industries*. In that case, the plaintiff employer sued a former employee for breaching a covenant not to compete contained in her employment contract by working for a direct competitor and by improperly using the plaintiff's customer data in that new position. *Allen Indus.*, __ N.C. App. at __, 788 S.E.2d at 209. The trial court granted the plaintiff's motion for a preliminary injunction prohibiting the defendant from working for the competitor through March 2014 — the end of the noncompetition period specified in the agreement. *Id.* at __, 788 S.E.2d at 209.

The defendant appealed the preliminary injunction order to this Court, and we dismissed the appeal as moot because the period of the covenant not to compete had expired. *Id.* at __, 788 S.E.2d at 209. Following our remand to the trial court, the

plaintiff voluntarily dismissed its action. The defendant then moved for damages on the ground that she had been wrongfully enjoined. The trial court denied the motion on the basis that the defendant's actions had, in fact, violated the covenant not to compete. *Id.* at __, 788 S.E.2d at 209.

On a second appeal to this Court, the defendant argued that the trial court should have treated the plaintiff's voluntary dismissal as an admission that it had wrongfully enjoined her. *Id.* at __, 788 S.E.2d at 209. We disagreed, explaining that "the dismissal was taken *only after there was no longer any need to maintain the case* because the covenant not to compete had expired by its own terms." *Id.* at __, 788 S.E.2d at 210 (emphasis added). Therefore, based on the fact that the case had become moot before the voluntary dismissal was taken, we affirmed the trial court's ruling. *Id.* at __, 788 S.E.2d at 211.

Here, the trial court specifically concluded that "[t]he Notice of Voluntary Dismissal without prejudice filed by [Van-Go] in this matter on or about December 10, 2015, which was unstipulated, is equivalent to a finding that the County and Enroute were wrongfully restrained by the entry of the TRO on June 29, 2015." (Citation and quotation marks omitted.) Van-Go does not dispute the trial court's finding that its dismissal of this action was voluntary and without conditions. However, Van-Go argues that the mootness exception to the *Blatt* rule is applicable here on the theory that its lawsuit had effectively become moot once its request for a

preliminary injunction was denied. To support this position, Van-Go's president, Azzam Osman, testified as follows in an affidavit submitted by Van-Go to the trial court:

> Van-Go's decision to discontinue the present litigation was consistent with its responsible financial business practices, taking into consideration the cost of further litigation, the profit that would be gained on the remainder of the contract, and the time that would be remaining on the contract by the time that the case would come to a final resolution.

Essentially, Van-Go asks us to recognize a "constructive mootness" doctrine premised upon its assertion that it dismissed its lawsuit based upon a "fiscally sound business decision." Recognition of such an exception, however, would be inconsistent with both our precedent and the purpose of Rule 41. Unlike in *Allen Industries*, where "the dismissal was taken only after there was no longer any need to maintain the case[,]" *id.* at __, 788 S.E.2d at 210, or in *Democratic Party of Guilford County*, where the plaintiffs' dismissal came after receiving the only relief they sought, 342 N.C. at 862, 467 S.E.2d at 685, Van-Go does not actually assert that its claims were legally moot at the time it dismissed its lawsuit. Rather, as Osman's above-quoted testimony demonstrates, Van-Go is making the qualitatively different argument that the value of the case going forward would have been diminished in comparison to the costs of litigation.

Van-Go points to no North Carolina legal authority — nor are we aware of any — holding that the enjoining party may avoid operation of the *Blatt* rule simply by asserting that the voluntary dismissal of the action was a business decision. Indeed, the adoption of such an exception would swallow the general rule articulated in *Blatt* as virtually any plaintiff in this procedural posture could claim its voluntary dismissal was motivated by a cost-benefit analysis. Moreover, in addition to being unworkable, such an exception would not be "consistent with the very purpose of the bond[,] which is to require that the plaintiff assume the risks of paying damages he causes as the price he must pay to have the extraordinary privilege of provisional relief." *Indus. Innovators*, 99 N.C. App. at 50, 392 S.E.2d at 431 (citation and quotation marks omitted).

Thus, the general rule articulated in *Blatt* is controlling on the present facts. Accordingly, the trial court did not err in holding that Defendants had been wrongfully enjoined by Van-Go.

**II. Award of Damages to Defendants**

In its alternative argument, Van-Go contends that the specific awards to EnRoute and the County were improper albeit for different reasons. We address each of Van-Go's arguments in turn.

**A. EnRoute's Damages**

Van-Go asserts that the trial court's award of $15,993.57 to EnRoute was not supported by proper evidence. "According to well-established North Carolina law, a party seeking to recover damages bears the burden of proving the amount that he or she is entitled to recover in such a manner as to allow the finder of fact to calculate the amount of damages that should be awarded to a reasonable degree of certainty." *Lacey v. Kirk*, 238 N.C. App. 376, 392, 767 S.E.2d 632, 644 (2014) (citation omitted), *disc. review denied*, __ N.C. __, 771 S.E.2d 321 (2015). In so doing, "absolute certainty is not required but evidence of damages must be sufficiently specific and complete to permit the [fact finder] to arrive at a reasonable conclusion." *Fortune v. First Union Nat'l Bank*, 323 N.C. 146, 150, 371 S.E.2d 483, 485 (1988) (citation and quotation marks omitted).

We have specifically applied this rule to the calculation of damages for lost profits. *See Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 223, 768 S.E.2d 582, 594 (2015) ("To recover lost profits, the claimant must prove such losses with 'reasonable certainty.' Although absolute certainty is not required, damages for lost profits will not be awarded based on hypothetical or speculative forecasts." (citation omitted)). "The amount of damages is generally a question of fact, but whether that amount has been proven with reasonable certainty is a question of law we review *de novo*." *Plasma Ctrs. of Am., LLC v. Talecris Plasma Res., Inc.*, 222 N.C. App. 83, 91, 731 S.E.2d 837, 843 (2012).

Here, the owner of EnRoute, Ricky Nelson Moore, submitted an affidavit to the trial court in which he set forth the basis for EnRoute's damages claim resulting from the TRO. Moore testified that EnRoute incurred revenue losses in the amount of $44,741.62 while the TRO was in effect. This figure was reached by multiplying the actual number of miles (29,053) for which Van-Go billed the County in connection with Medicaid transportation services provided during the time period in which the TRO was in effect by the rate ($1.54) to which EnRoute and the County agreed in the Contract.

Moore's affidavit then stated that EnRoute was able to avoid $20,918.00 in "variable costs (such as fuel and labor expenses)" that it would have incurred had the TRO not been in place and EnRoute actually performed the Contract during that time period. To support this figure, Moore explained that he "calculated that EnRoute's total fuel and labor expenses amount to approximately $.72 per mile, based on historical data (namely, our costs per mile during the past few months)." Moore then subtracted these avoided costs ($20,918.00) from the lost revenue ($44,741.62) to arrive at a lost profits figure of $23,823.00.[2]

In response to Moore's affidavit, Van-Go filed the affidavit of Osman stating that, based upon Van-Go's operating costs during the month of July, "[i]t is very unlikely that EnRoute could provide 29,053 service miles at a rate of $1.54 per mile

---

[2] Moore rounded down to the nearest dollar in arriving at this figure.

over [the period during which the TRO was in effect] and realize a profit in excess of ten thousand dollars[.]"

After holding a hearing on 21 March 2016, the trial court issued its order awarding damages in the amount of $15,993.57 to EnRoute. The trial court's order contained the following pertinent findings of fact:

> 30.    [A]s a result of the TRO entered on June 29, 2015, the County and Enroute were restrained from performing under the Contract, which would have taken effect on July 1, 201[5], for a period of (20) days.
>
> 31.    According to the Affidavit of Ricky Nelson Moore, which relies in part upon information that is also contained in the Affidavit of Azzam Osman, Enroute incurred lost profits of $23,823.00 during the period from July 1, 2015 to July 20, 2015 as a result of the TRO.
>
> . . . .
>
> 35.    The Court finds that, but for the issuance of the TRO, Enroute would have been able to perform its duties under the Contract beginning on July 1, 2015. Accordingly, Enroute has demonstrated, to the satisfaction of the Court, that it has sustained substantial lost revenues and profits as a result of the issuance of the TRO. The Court finds the affidavit testimony of Mr. Ricky Nelson Moore credible as to the amounts of lost revenues and profits.

The trial court then entered the following conclusion of law: "Enroute ha[s] established that, by reason of said wrongful restraint, [it has] incurred actual and substantial damages and, accordingly, [EnRoute is] entitled to a distribution of the bond proceeds." The trial court proceeded to award the sum of $15,993.57 to EnRoute.

On appeal, Van-Go contends that EnRoute failed to adequately support its calculation that its costs would have amounted to $0.72 per mile. Specifically, Van-Go faults EnRoute for failing to provide evidence other than Moore's affidavit that would support this figure and for basing the amount upon fuel and labor "costs per mile during the past few months" rather than costs during the time period covered by the TRO. Van-Go points out that Moore's affidavit was executed on 4 February 2016, meaning that the avoided costs figure was derived from costs incurred during the latter part of 2015 and early 2016 whereas the TRO was in place during July 2015. Van-Go states in its brief that "Moore's calculation does not take into account the difference in fuel price in July 2015 and the 'past few months.'"

As noted above, damages for lost profits may not be speculative. *See, e.g.*, *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 292 N.C. 557, 560, 234 S.E.2d 605, 607 (1977) (holding that party's mere statement of amount of losses "provides no basis for an award of [the party's] damages for lost profits, since any estimate of [the party's] expected profits must on the evidence presented be based solely upon speculation"); *Rankin v. Helms*, 244 N.C. 532, 538, 94 S.E.2d 651, 656 (1956) (ruling that party's bald statement of damages amount was "if not a mere guess, a statement of his mere opinion or conclusion as to the amount of damages he has suffered, where no proper basis for the receipt of such evidence had been shown"); *Iron Steamer, Ltd. v. Trinity Rest., Inc.*, 110 N.C. App. 843, 847, 431 S.E.2d 767, 770 (1993) ("North Carolina courts

have long held that damages for lost profits will not be awarded based upon hypothetical or speculative forecasts of losses.").

The risk of speculative lost profits calculations is greatest in situations where parties must estimate revenues that they likely would have earned in an uncertain industry with numerous variables. *See, e.g., id.* at 849, 431 S.E.2d at 771 ("[I]n an unestablished resort restaurant context, the relationship between lost profits and the income needed to generate such lost profits is peculiarly sensitive to certain variables including the quality of food, quality of service, and the seasonal nature of the business. Therefore, proof of lost profits with reasonable certainty under these circumstances requires more specific evidence and thus a higher burden of proof.").

The present case, however, deals not with an inherently uncertain forecast of profits but rather with known historical facts. Here, the expected revenue was both precise and undisputed as it was based upon the per-mile rate ($1.54) set forth in the Contract and the actual number of miles (29,053) Van-Go billed to the County during the TRO period. Moreover, Moore specified his basis for the other key variable, the avoided costs figure, stating that EnRoute's records reflected a cost-per-mile rate during "the past few months" of $0.72, which included fuel and labor costs. We are not convinced that the discrepancy in time frames Van-Go attempts to rely upon is material under the facts of this case given (1) the relatively close proximity of these two time frames; and (2) the fact that although the total amount of damages for lost

profits stated in Moore's affidavit was \$23,823.00, the trial court awarded EnRoute only \$15,993.57.

We have never held that a party is required to meet a formulaic standard in order to satisfy its burden of affixing damages with reasonable certainty. Rather, we have previously explained that generally "[e]xpert testimony and mathematical formulas are not required to meet the burden of proof concerning damages." *Hudgins v. Wagoner*, 204 N.C. App. 480, 492, 694 S.E.2d 436, 446 (2010), *appeal dismissed and disc. review denied*, 365 N.C. 88, 706 S.E.2d 250 (2011).

Our decision in *United Leasing Corp. v. Guthrie*, 192 N.C. App. 623, 666 S.E.2d 504 (2008) is instructive. In that case, the damages issue concerned the value of merchandise in a large box truck that was being transferred from one store to another. At trial, a witness testified that the aggregate value of this merchandise was \$150,000. The witness based this assessment upon his professional background, which included moving similar inventory during the process of setting up new stores and his "familiarity with the inventory at the various store locations and its pricing." *Id.* at 628, 666 S.E.2d at 508. On appeal, we held that his testimony was properly admitted lay opinion testimony as it "tended to show that he had knowledge of the property and some basis for his opinion regarding the value of said property at the time of its conversion." *Id.* at 629, 666 S.E.2d at 508 (citation, quotation marks, and brackets omitted). We then determined that this "lay opinion testimony was

sufficient to establish the aggregate value of the converted inventory." *Id.* at 631-32, 666 S.E.2d at 510.

Here, we conclude that Moore's testimony provided a sufficient basis from which the trial court could assess EnRoute's damages with a reasonable degree of certainty. In fixing the specific amount of damages, the trial court was permitted to determine the appropriate weight to be accorded to the evidence before it. *See CDC Pineville, LLC v. UDRT of N.C., LLC*, 174 N.C. App. 644, 655, 622 S.E.2d 512, 520 (2005) ("If there is a question regarding the reliability of the evidence presented to support an award of damages, the questions should go to the weight of the evidence[.]"), *disc. review denied*, 360 N.C. 478, 630 S.E.2d 925 (2006). Accordingly, we are unable to conclude that the trial court committed reversible error in its award of damages to EnRoute.

**B. Damages Awarded to County**

Finally, Van-Go argues that the trial court erred in awarding damages under the injunction bond to the County because the issuance of the TRO did not actually cause the County to suffer any damages. Instead, Van-Go contends, any additional monies paid by the County during the period in which the TRO was in effect belonged to the State given the manner in which funding for local Medicaid programs is administered. This argument lacks merit.

In its verified response in opposition to Van-Go's motion for return of the bond,

the County stated that during the TRO period, it paid Van-Go a total of $53,748.05 for Medicaid transportation services. This figure was based on a total of 29,053 miles driven under the then-existing contract rate of $1.85 per mile. The County's response also stated that had the TRO not been in place and EnRoute been permitted to perform the Contract, the County would have paid EnRoute $1.54 per mile for these 29,053 miles, resulting in a total of $44,741.62. Therefore, according to the response, the County was damaged in the amount of $9,006.43 — the difference between the amount it actually paid Van-Go and the amount it would have paid EnRoute to perform the same services had the TRO not been issued.

The trial court made the following pertinent findings of fact on this issue:

> 32. [T]he verified Opposition submitted by the County and Board clearly establishes that the County was required to pay [Van-Go] a rate of $1.85 per mile, which was the rate under the prior Medicaid Transportation Contract, as opposed to the $1.54 per mile rate that the County would have been required to pay Enroute for the same number of miles.
>
> 33. It is undisputed based upon the Affidavits and other filings before the Court that [Van-Go] billed the County, through its DSS, for 29,053 miles during the period from July 1, 2015 to July 20, 2015 and that these miles were billed at the prior contract rate of $1.85 per mile.
>
> 34. Accordingly, the County incurred $9,006.43 in Medicaid Transportation costs that it would not otherwise have had to pay as a result of the TRO. The fact that the funds originated with DHHS does not alter this fact, and the Court finds that the County has a duty to seek to

> recover the above amount, despite the fact that the funds
> may have originated with DHHS.

The trial court therefore awarded the County the full $9,006.43 it sought. On appeal, Van-Go does not challenge the calculation of this figure but rather asserts that the *County* was not damaged by paying out the extra funds because (1) the County is "simply a conduit for the State" in that the State provided the County the funds to pay Van-Go for the transportation services; and (2) the County does not possess a legal duty to recoup the funds on behalf of the State.

Van-Go has failed to cite any legal authority showing that the County — after being sued, wrongfully enjoined, and forced to pay out funds to Van-Go — had no right to collect from Van-Go the monetary damages that Van-Go caused to the County's Medicaid transportation program. Pursuant to applicable law, counties bid out, award, and administer contracts for Medicaid transportation services and cause public monies to be paid to vendors performing those contracts. The existence of any obligation that the County may ultimately have to reimburse the State for the $9,006.43 it was awarded is not relevant to the question of whether the County was entitled to seek recovery of taxpayer funds that were wrongfully expended due to the actions of Van-Go. Accordingly, Van-Go has failed to show that the award of damages to the County was improper.

## Conclusion

For the reasons stated above, we affirm the trial court's 12 May 2016 order.

AFFIRMED.

Chief Judge McGEE and Judge MURPHY concur.