An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-493

Filed 4 March 2026

Alamance County, No. 20CVS001146-000

STEPHEN T. ISRAEL, Plaintiff,

v.

JANET DODSON ZACHARY, Defendant.

Appeal by Defendant from judgment entered 20 September 2024 by Judge Stephan R. Futrell in Alamance County Superior Court. Heard in the Court of Appeals 20 November 2025.

> *The Vernon Law Firm, P.A., by R. Bryan Norris, Jr., and Benjamin D. Overby, for Plaintiff.*
>
> *Pittman & Steele, PLLC, by Timothy W. Gray, for Defendant.*

GRIFFIN, Judge.

Plaintiff Stephen T. Israel and Defendant Janet Dodson Zachary appeal from the trial court's judgment entered on 20 September 2024 ordering Plaintiff be allowed thirty days to retrieve his personal property from Defendant's property and ordering damages of $45,584.00 for depreciation and loss of use be awarded to Plaintiff. We affirm in part and vacate and remand in part.

## I. Factual and Procedural History

Defendant is the owner of 96.90 acres in Alamance County ("the Farm"). On 29 December 2008, Plaintiff and Defendant's late husband entered into a ten-year agricultural lease, recorded in Book 2777, Page 554 of the Alamance County Registry ("the Lease"). During his time leasing the Farm, Plaintiff made multiple improvements to the Farm, including building portable structures on the Farm and moving various pieces of heavy equipment to the Farm. Upon Defendant's husband's death, the Farm passed to Defendant. In or around April 2018, Plaintiff and Defendant discussed renewing the lease. Defendant stated she wanted to extend the lease for three to five years, to which Plaintiff agreed, leading Plaintiff to hire an attorney to draft the lease extension.

Upon receiving the draft lease extension, Defendant told Plaintiff she wanted to sign the extension at the lawyer's office with Plaintiff present as well. However, on at least two occasions, Defendant did not appear at the scheduled meeting times with Plaintiff at the lawyer's office nor did she notify Plaintiff she was not going to appear. The lease extension remained unsigned in November 2018. That month, Defendant requested Plaintiff's semi-annual rent payment, which Plaintiff placed in the form of a check in an envelope with a letter stating acceptance of the check constituted payment for an extension through 1 May 2019. Defendant received the envelope with its contents, read the letter, and deposited the check.

On 8 February 2019, without any notice of default delivered to Plaintiff or prior complaint to Plaintiff or his attorney alleging any default or noncompliance with the Lease terms or conditions, Defendant sent Plaintiff's attorney a letter contending she had not agreed to a lease extension with Plaintiff; the lease had expired on 1 December 2018; and Plaintiff should vacate the property and remove all his personal property from the premises immediately. Also, during this time, Defendant caused the Alamance County Sherriff to contact Plaintiff, telling Plaintiff he was on the subject property illegally and should remove his property. Plaintiff's counsel responded to Defendant on 11 February 2019, arguing the lease extension was valid through May 2019.

After Defendant's letter and the visit from the Sherriff, Plaintiff and other individuals assisting him began to attempt to remove Plaintiff's personal property from the Farm. Plaintiff testified he required the assistance of other individuals in helping him remove his personal property due to previous back surgery the year prior. Plaintiff testified three individuals assisted him in attempting to remove his personal property from the Farm: Lucas Crawford, Ethan Lloyd, and Andy Lloyd. At trial, Plaintiff testified "Andy Lloyd was going to [help Plaintiff move]," and "did help some," but "[Andy Lloyd] didn't want any problems with the law either or anything after [Sheriff] Terry Johnson had called him." Plaintiff also testified Ethan Lloyd refused to come back to the Farm to help assist removing property after Defendant approached him and "[t]old him to leave" the Farm while he was moving cattle, after

which he refused to return to the Farm. Additionally, Lucas Crawford testified at trial that while he was retrieving Plaintiff's feed bin from the Farm, Defendant "asked a lot of questions[,] and [Mr. Crawford] could tell [Defendant] didn't want [him] there," so Mr. Crawford "told [Plaintiff] [he] didn't mind helping [Plaintiff,] but [Plaintiff] would have to be there first." Further, when asked if he "fe[lt] comfortable going out there and helping [Plaintiff] move equipment during the time that he was finishing up his lease," Mr. Crawford testified, "No. . . . . Because I don't like hearing a bunch of mouth and I'm not going to listen to it. So I don't want to put myself in that situation. . . . . I didn't want no trouble."

On or about 19 June 2019, Defendant caused her attorney to send a letter trespassing Plaintiff from the Farm. On 20 June 2019, Defendant initiated a complaint in summary ejectment against Defendant (19CVM1681) and obtained a judgment for possession of the Farm on 17 July 2019. On 31 July 2019, the Alamance County Clerk of Court ordered the Alamance County Sherriff to remove Plaintiff from the Farm. On 12 August 2019, the Alamance County Sheriff served the writ of possession upon Plaintiff. Plaintiff contacted Defendant's son, Defendant's power of attorney for the Farm, on 13 August 2019 via text, saying he was going to the Farm to begin completely removing his property, to which Defendant's son acceded. Plaintiff notified Defendant's son from 13 August to 18 August 2019 of his progress in removing his property but also informed Defendant's son that his–Plaintiff's– efforts were impeded by his back issues, adverse weather conditions, and getting

assistance from others. On 18 August 2019, Plaintiff asked Defendant's son if he could have "at least through Wednesday" to finish removing his property. However, when Plaintiff arrived on the Farm on 20 August 2019, the Alamance County Sheriff's Department instructed Plaintiff to vacate or be arrested for trespassing. As testified to by Defendant, Plaintiff's property left on the Farm remained in its place untouched and unkept, leading to its deterioration. On 2 July 2020, Plaintiff filed this action at issue, "alleging that he had been prevented from removing his personal property from [the Farm.]" On 9 September 2020, Defendant filed her answer and counterclaims.

On 20 September 2024, after a bench trial, the trial court ruled in favor of Plaintiff, issuing the following order, in relevant part:

> 23. Also in February 2019, Defendant or persons on her behalf caused the Sheriff of Alamance County (Terry Johnson) to contact Plaintiff directly, and the Sheriff told Plaintiff that he was illegally on the subject premises and should remove his property from the subject premises.
>
> 24. After Plaintiff heard from the Sheriff and Defendant, Plaintiff and other individuals assisting Plaintiff began their attempts to engage in activities related to removing Plaintiff's personal property from the subject premises. However, Defendant or persons on her behalf–or both– interfered with their efforts or spoke threateningly to them, so that Plaintiff's helpers feared being involved in legal proceedings (including but not limited to criminal proceedings) prompted by Defendant.
>
> . . . .
>
> 26. Plaintiff removed some but not all of his personal property from the subject premises before May 1, 2019.

27. Defendant or someone on her behalf obstructed Plaintiff's efforts to remove his remaining property from the premises before May 1, 2019.

. . . .

31. Before the. expiration of the seven days after execution of the writ of execution, Plaintiff notified Defendant's attorney and Defendant's son (George Douglas Zachary), who was Defendant's Limited Power of Attorney for purposes of the subject property, that he (Plaintiff) had made arrangements for removing his property from the subject premises; and Defendant's son, power-of-attorney, and agent acc[]eded to Plaintiff's plans before the expiration of the seven (7) days.

. . . .

33. [] Plaintiff's plans for removal of his property from the premises within seven days of the writ of possession were interrupted by adverse weather conditions.

34. Plaintiff brought trucks and trailers to the subject premises in order to remove some of the heavier large equipment.

35. When Plaintiff. undertook to execute his plans on August 20, 2019, Defendant or persons on her behalf caused the Sheriff of Alamance County (or his deputies) to come to the premises and advise Plaintiff to vacate or be arrested for trespassing.

36. After the Sheriff's deputies ordered Plaintiff to vacate the premises, Plaintiff attempted to communicate with [] Defendant or her son about retrieving his property from the premises, but they (and either of them) refused to communicate with Plaintiff.

37. Plaintiff did not return to the subject premises until this [c]ourt ordered, on September 9, 2024, that he be permitted to inspect the condition of his property.

38. Plaintiff's remaining personal property has remained on the subject premises since August 20, 2019.

. . . .

42. Defendant has refused to allow Plaintiff to remove his personal property from the premises.

43. Defendant had no valid reason for refusing to allow Plaintiff or his helpers to remove his property from the premises without interference from Defendant or her family.

44. Defendant or her family members had no valid reason for interfering with the efforts of Plaintiff or his helpers to remove Plaintiff's property from the subject premises.

. . . .

50. After Defendant trespassed Plaintiff from the subject property, Plaintiff's equipment and personal property remained outside, exposed to the weather; and Defendant made no effort to protect that equipment or property from the elements, and she refused Plaintiff's efforts to remove that equipment or property from the subject premises without good cause.

51. After Defendant evicted Plaintiff from the property, Plaintiff annually paid property taxes and insurance premiums for coverage as to his property located on the subject premises. That property included the following:

> (a) On June 20, 2008, Plaintiff paid $10,788.62 for two free-standing Farm Tech structures that he erected on the subject premises; and he stored equipment, hay, and tools under those structures [Plaintiff Exhibit 2]. Those two structures remained on the subject premises when Defendant evicted him. Because Plaintiff affixed those structures to the ground they became permanent fixtures to the

premises at issue.

(b) On July 28, 2009, Plaintiff paid $6,500 for a New Holland NH 170 skid steer loader that remained on the subject premises at the time Defendant evicted him. [Plaintiff exhibit 3] On his property insurance inventory list [Plaintiff Exhibit 5], Plaintiff placed a value of $10,000.00 on that skid steer.

(c) In June 2012, Plaintiff paid $19,000.00 for a caterpillar track loader and carriage that remained on the subject premises at the time Defendant evicted him. [Plaintiff Exhibit 4] On his property insurance inventory list [Plaintiff Exhibit 5], Plaintiff placed a value of $20,000.00 on that loader and carriage.

(d) Plaintiff paid $6,000.00 for a three-point hitch sprayer that remained on the subject premises at the time Defendant evicted him. On his property insurance inventory list, Plaintiff placed a value of. $6,000.00 on that sprayer.

(e) In the early 2000s, Plaintiff paid $500.00 for a chisel plow that remained on the subject premises when Defendant evicted him; and it had a value of at least $500.00 when Defendant evicted him.

(f) In 2002, Plaintiff paid $17,000.00 plus tax for 1996 Dodge 2500 4-wheel drive truck. After he bought it, he made various improvements and paid for regular maintenance and upkeep; and he continued to pay taxes and insurance as to that vehicle, even though it remained on the subject premises after Defendant evicted him. [] Plaintiff did not establish by the greater weight of the evidence the truck's fair market value as of the date that Defendant evicted Plaintiff from the subject premises.

(g) In or around 2008, Plaintiff paid $3,500.00 for a

Hillsborough trailer that remained on the subject premises when Defendant evicted him.

(h) In or around 2005, Plaintiff paid $600.00 for a livestock trailer, and then he performed improvements on the trailer at a cost of $4,000.00. That trailer remained on the subject premises when Defendant evicted him.

(i) In or around 2007, Plaintiff paid $3,500.00 for a Disc Harrow that remained on the subject premises when Defendant evicted him. Its value in 2019 was $1,500[.]00.

(j) In early 2000, Plaintiff paid $300.00 for a corn header, and then he spent approximately $1,200.00 to improve the same. The corn header remained on the premises when Defendant evicted him, and its value at that time was at least $300.00.

(k) In 2006, Plaintiff paid $1,500.00 for a bush hog; and before Defendant evicted him from the subject premises, Plaintiff had changed the blades on it. The bush hog remained on the subject premises when Defendant evicted him, and its value at that time was at least $1,500.00.

(l) In 2007, Plaintiff paid $200.00 for a tool bar, cultivator and tool bracket that remained on the subject premises when Defendant evicted him. Those items had a value of $200.00 at the time [Plaintiff] was evicted from the subject premises.

(m) In 2005, Plaintiff paid $1,200.00 for a fuel tank that remained on the subject premises at the time Defendant evicted Plaintiff from the subject premises.

(n) Plaintiff bought wire for $409.00 that remained when Defendant evicted him from the subject premises.

(o) Plaintiff bought a face plate and pallet forks for $375.00 that remained when Defendant evicted him from the subject premises.

52. Plaintiff also testified about other tools, equipment, and machinery that he owned but remained on the subject premises when Defendant evicted him; however, he did not testify as to a purchase price or fair market value of the same.

53. After Defendant evicted Plaintiff from the subject premises, Plaintiff continued his farming activities at other locations; and in order to conduct those farming activities, he either rented or purchased many of the same tools, machines, or equipment that remained on the subject premises.

54. At all times at issue, Plaintiff owned the items of personal property described in Paragraph Numbers 51 and 52, preceding.

55. Because of Defendant's actions described herein or the actions of others on Defendant's behalf, Plaintiff was dispossessed of the items of personal property described in Paragraph Numbers 51 and 52, preceding, without valid cause or excuse.

56. Because of Defendant's actions described herein, or because of the actions of others on Defendant's behalf, Plaintiff has been damaged in the amount of $45,584.00.

Based on those findings of fact, the trial court also made the following conclusions of

law:

3. Defendant breached the covenant of quiet enjoyment of Plaintiff's leasehold by entering onto the subject premises and running off Plaintiff's workers during the period of the lease. This breach, in combination with Plaintiff's health issues, proximately interfered with Plaintiff's efforts to

remove his equipment from the subject premises before Defendant trespassed Plaintiff.

4. [N.C. Gen. Stat. §] 42-25.9(g) allows the tenant to request release of personal property left on the premises after execution of a Writ of Possession within seven (7) days, but the statute is not clear as to the consequence of a tenant failing to remove all of its property within the seven (7) days after giving notice. Plaintiff provided timely notice of his plan to remove his property from the subject premises and Defendant (or persons on her behalf) agreed to Plaintiff's plan. Because of adverse weather conditions, and Plaintiffs health issues, Plaintiff was unable to complete the removal of his property from the subject premises within seven days of the notice of writ of possession.

5. Defendant converted Plaintiff's equipment to her own use and benefit to damage and detriment of Plaintiff.

6. Defendant had no valid reason to prevent Plaintiff (or persons on his behalf) to remove his property from the subject premises.

7. Defendant unreasonably interfered with the actions of Plaintiff and others on his behalf to remove his property from the subject premises.

8. Defendant was unjustly enriched by retaining Plaintiff's equipment after she trespassed Plaintiff in August 2019.

9. Plaintiff did not trespass onto Defendant's property.

. . . .

15. Plaintiff has been damaged in the amount of $45,584.00.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. Plaintiff is allowed period of thirty (30) days from the entry of this order to remove the personal property listed in Paragraph Numbers 51 and 52 of this judgment.

2. Defendant shall pay Plaintiff damages in the amount of Forty-five Thousand Five Hundred Eighty-four Dollars ($45,584.00) for the depreciation and loss of use of his equipment.

Defendant timely appealed. Plaintiff filed his motion to strike on 16 September 2025, and Defendant filed her motion to amend 29 September 2025.

## II. Analysis

Defendant argues the trial court erred in finding Findings of Fact 27, 55, and 56, as well as Conclusions of Law 4, 5, 8, and 15. We agree in part.[1]

Each portion of the trial court's order must be supported.

> The trial court is required to set forth the specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached. Evidence must support findings; findings must support conclusions; conclusions

---

[1] Plaintiff argues throughout his brief that Defendant's arguments and briefing are inconsistent with N.C. R. App. P. 28(b)(6), which says "[t]he argument shall contain a concise statement of the applicable standard(s) of review for each issue, which shall appear either at the beginning of the discussion of each issue or under a separate heading placed before the beginning of the discussion of all the issues. The body of the argument and the statement of applicable standard(s) of review shall contain citations of the authorities upon which the appellant relies. Evidence or other proceedings material to the issue may be narrated or quoted in the body of the argument, with appropriate reference to the record on appeal, the transcript of proceedings, or exhibits." N.C. R. App. P. 28(b)(6). Although Defendant's arguments in her briefing are quite scant, they contain the bare minimum relevant legal citation and factual discussion to survive the appellate rules. *See K2HN Constr. NC, LLC v. Five D Contractors, Inc.*, 267 N.C. App. 207, 215 n. 6, 832 S.E.2d 559, 565 n. 6 (2019) (dismissing an argument where no legal citation or standard was cited in the body of the argument and no pertinent legal citation or standard was found); *Thompson v. Bass*, 261 N.C. App. 285, 292, 819 S.E.2d 621, 627 (2018) (dismissing argument containing "*no* citation of authority in support of an issue" (emphasis added)).

must support the judgment, each link in the chain of
reasoning must appear in the order itself.

*Carolina Mulching Co. LLC v. Raleigh-Wilmington Invs. II, LLC*, 272 N.C. App. 240,

245–46, 846 S.E.2d 540, 544 (2020) (citation modified).

When "reviewing a trial judge's findings of fact, we are 'strictly limited to

determining whether the trial judge's underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge's ultimate conclusions of

law.'" *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quoting *State

v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). "Competent evidence is

evidence that a reasonable mind might accept as adequate to support the finding."

*Real Time Resols., Inc. v. Cole*, 293 N.C. App. 632, 635, 902 S.E.2d 269, 272 (2024)

(quoting *In re Adams*, 204 N.C. App. 318, 321, 693 S.E.2d 705, 709 (2010)). "Even if

'evidence is conflicting,' the trial judge is in the best position to 'resolve the conflict.'"

*Williams*, 362 N.C. at 632, 669 S.E.2d at 294 (quoting *State v. Smith*, 278 N.C. 36, 41,

178 S.E.2d 597, 601 (1971)). Therefore, "findings of fact made by the trial judge are

conclusive on appeal if supported by competent evidence, even if . . . there is evidence

to the contrary." *Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695

S.E.2d 429, 434 (2010) (citation modified). Moreover, "[w]here no exception is taken

to a finding of fact by the trial court, the finding is presumed to be supported by

competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93,

97, 408 S.E.2d 729, 731 (1991) (citation omitted). "Conclusions of law drawn by the trial court from its findings of fact are reviewable de novo on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) (italics omitted) (citing *Humphries v. City of Jacksonville,* 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980)).

## A. Finding of Fact 27

First, Defendant argues "[t]he trial court erred in finding as a fact (Number 27) that [] Defendant or someone on her behalf obstructed Plaintiff's efforts to remove his remaining property from the premises before [1] May []2019." According to Defendant, no competent evidence in the record "show[s] that [] Defendant took any actions to obstruct Plaintiff's efforts to remove his property from the premises before 1 May 2019. It is not [] Defendant's fault that the three (3) people [] Plaintiff[] enlisted to help him refused to do so." Thus, Defendant argues "this finding of fact should not be used to support any conclusion of law." However, the trial court found the following in Findings of Fact 24, 43, and 44,

> 24. After Plaintiff heard from the Sheriff and Defendant, Plaintiff and other individuals assisting Plaintiff began their attempts to engage in activities related to removing Plaintiff's personal property from the subject premises. However, Defendant or persons on her behalf–or both– interfered with their efforts or spoke threateningly to them, so that Plaintiff's helpers feared being involved in legal proceedings (including but not limited to criminal proceedings) prompted by Defendant.
>
> . . . .

- 14 -

43. Defendant had no valid reason for refusing to allow Plaintiff or his helpers to remove his property from the premises without interference from Defendant or her family.

44. Defendant or her family members had no valid reason for interfering with the efforts of Plaintiff or his helpers to remove Plaintiff's property from the subject premises.

These findings of fact go unchallenged and are thus binding on this Court, which would render our inquiry into Finding of Fact 27 unnecessary because Findings of Fact 24, 43, and 44 support the same finding as Finding of Fact 27. But even assuming arguendo Defendant's argument is not defeated by the unchallenged findings of fact, we hold there was sufficient competent evidence to support Finding of Fact 27.

At trial, Plaintiff testified "Andy Lloyd was going to [help Plaintiff move]," and "did help some," but "[Andy Lloyd] didn't want any problems with the law either or anything after [Sheriff] Terry Johnson had called him." Of course, in unchallenged Findings of Fact 23 and 24, the trial court found "Defendant or persons acting on her behalf" caused the Alamance County Sherriff to contact Plaintiff and be involved in the lease dispute, causing Plaintiff and the individuals helping him to begin to attempt to remove his personal property. Thus, the trial court could infer Defendant's, or someone acting on behalf of her's, causing the Sheriff to be involved and Andy Lloyd's not assisting was a result of Defendant's actions. *See In re Est. of*

*Trogdon*, 330 N.C. 143, 148, 409 S.E.2d 897, 900 (1991) (stating "the trial judge determines which inferences shall be drawn and which shall be rejected").

Further, Plaintiff testified at trial that Ethan Lloyd refused to come back to the Farm to help assist removing property after Defendant approached him and "[t]old him to leave" the Farm while he was moving cattle. Additionally, Lucas Crawford testified at trial that while he was retrieving Plaintiff's feed bin from the Farm, Defendant "asked a lot of questions[,] and [Mr. Crawford] could tell [Defendant] didn't want [him] there," so Mr. Crawford "told [Plaintiff] [he] didn't mind helping [Plaintiff,] but [Plaintiff] would have to be there first." Further, when asked if he "fe[lt] comfortable going out there and helping [Plaintiff] move equipment during the time that he was finishing up his lease," Mr. Crawford testified, "No. . . . . Because I don't like hearing a bunch of mouth and I'm not going to listen to it. So I don't want to put myself in that situation. . . . . I didn't want no trouble."

Thus, there was sufficient competent evidence that "a reasonable mind might accept as adequate to support the finding," *Real Time Resols., Inc.*, 293 N.C. App. at 635, 902 S.E.2d at 272, even if "there is evidence to the contrary," *Sisk*, 364 N.C. at 179, 695 S.E.2d at 434. Therefore, the trial court did not err in finding Finding of Fact 27.

**B. Finding of Fact 55**

Second, Defendant argues "[t]he trial court erred in finding as a fact (Number 55) that because of Defendant's actions described herein or the action of others on

Defendant's behalf, Plaintiff was dispossessed of the items of personal property described in paragraphs number 51 and 52 of the judgment, without valid cause or excuse." First, in support of her argument, Defendant incorporates her argument for Finding of Fact 27 if the trial court was referring to any action to prevent retrieval prior to 1 May 2019. Second, Defendant argues that there is no competent evidence she "took any action to prevent [Plaintiff's] retrieval of personal property" between 1 May 2019 and 19 August 2019. Third, Defendant argues "[t]o the extent this finding of fact refers to actions taken by [] Defendant after 19 August 2019, Defendant . . . properly regained possession of her property through" the 20 June 2019 summary ejectment, the 17 July 2019 judgment granting Defendant the property, and the 12 August 2019 writ of possession served on Plaintiff. Thus, Defendant argues, pursuant to N.C. Gen. Stat. § 42-36.2(b) (2025), Plaintiff only had seven days to retrieve his personal property from the Farm after service of the writ of possession, "but he failed to do so."

Defendant's arguments contain two parts: a factual component based on whether there was competent evidence to find Plaintiff was dispossessed of his personal property because of Defendant's actions or actions on her behalf, and a question of law as to what determines allowing Plaintiff access to his personal property. Turning to the factual component, as we held regarding Finding of Fact 27 and combined with unchallenged Findings of Fact 24, 43, and 44, there was competent evidence to support Defendant or individuals acting on her behalf

interfered with Plaintiff's efforts to retrieve his property through the end of the lease extension. Further, the record reflects after 1 May 2019, Plaintiff attempted to retrieve his property but was blocked by someone else's equipment from being able to remove his property from the Farm. Thus, Plaintiff was obstructed from removing his property during the lease extension, pushing his removal efforts into the time period after the lease extension concluded, which was further inhibited by adverse weather.

Regarding Defendant's legal argument, Defendant argues section 42-36.2(b) "does not give the tenant an unlimited amount of time to make arrangements to retrieve their property and does not require the landlord to allow the tenant to come back to the property after seven days to retrieve their property," and the language of N.C. Gen Stat. § 42-25.9 and section 42-36.2 "taken together . . . allows the landlord to dispose of or throw away property that is not retrieved within the time allowed, it is obvious that it was the intent of the legislature to terminate any ownership interest that a tenant has in any personal property that is not retrieved unless the landlord is seeking to sell the tenant's property." Thus, Defendant argues "Plaintiff failed to retrieve his property within the time allowed, the property was abandoned by operation of law, and any claims Plaintiff makes for compensation or damages related to such abandoned property must fail as his ownership rights were lost and he has

been divested of title to the property."[2] Plaintiff argues Defendant's statutory argument is unpreserved. Defendant argues her argument was preserved based on Plaintiff's testimony regarding how long he thought he had to remove his property in relation to the writ of possession and her proposed order, which she included as an appendix to her reply brief, and filed a motion to amend for the proposed order because it was not in the record using Rule 9 of the North Carolina Rules of Appellate Procedure. Plaintiff filed a motion to strike the proposed judgments, arguing Defendant's attempt to include the proposed judgments outside of the record was a violation of rules 9 and 28 of the rules of appellate procedure.

Before we address Defendant's legal argument, we must review the motion to amend and, consequently, whether Defendant's legal argument is preserved for review on this appeal. "[R]ules of procedure are necessary in order to enable the courts properly to discharge their duty of resolving disputes." *Guerra v. Harbor Freight Tools*, 287 N.C. App. 634, 637, 884 S.E.2d 74, 76 (2023) (quoting *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 193, 657 S.E.2d 361, 362 (2008)). "It necessarily follows that failure of the parties to comply with the rules, and failure of the appellate courts to demand compliance therewith, may impede the administration of justice." *Id.*

---

[2] Defendant also reiterates the same argument for issues eight and nine.

"In appeals from the trial division of the General Court of Justice, review is solely upon the record on appeal." N.C. R. App. P. 9(a). The record on appeal is settled between the parties pursuant to Rule of Appellate Procedure 11(c). Amendments to the record on appeal may be made pursuant to Rule of Appellate Procedure 9(b)(5), which says,

> a. Additional Materials in the Record on Appeal. If the record on appeal as settled is insufficient to respond to the issues presented in an appellant's brief or the issues presented in an appellee's brief pursuant to Rule 10(c), the responding party may supplement the record on appeal with any items that could otherwise have been included pursuant to this Rule 9. The responding party shall serve a copy of those items on opposing counsel and shall file the items in a volume captioned "Rule 9(b)(5) Supplement." The supplement shall be filed no later than the responsive brief or within the time allowed for filing such a brief if none is filed.
>
> b. Motions Pertaining to Additions to the Record on Appeal. *On motion of any party or on its own initiative, the appellate court may order additional portions of a trial court record or transcript sent up and added to the record on appeal.* On motion of any party, the appellate court may order any portion of the record on appeal amended to correct error shown as to form or content. Prior to the filing of the record on appeal in the appellate court, such motions may be filed by any party in the trial court.

N.C. R. App. P. 9(b)(5) (emphasis added).

Here, the record was settled pursuant to Rule 11(c) on 8 May 2025. Defendant originally attached the proposed judgments as appendices to her reply brief, which would not have been an acceptable way to introduce additional portions of the record

into the record on appeal. *See* N.C. R. App. P. 28(d), (h) (describing the role of an appendix and what is appropriate or required to be included in an appendix as well as the purpose of the reply brief). To be sure, this Court has held it "improper for the [appellant] to attach a document not in the record and not permitted under N.C. R. App. P. 28(d) in an appendix to its brief." *Horton v. New S. Ins. Co.*, 122 N.C. App. 265, 268, 468 S.E.2d 856, 858 (1996) (citing N.C. R. App. P. 9(a)). However, unlike in *Horton*, where this Court noted the appellant never made any attempt to amend the record on appeal pursuant to the rules, *id.* at 267–68, 468 S.E.2d at 857, here, Defendant filed a motion to amend with this Court for the proposed judgments contained in the appendices of her reply brief. *See* N.C. R. App. P. 37 (outlining the procedure for filing motions with this Court); N.C. R. App. P. 9(b)(5). We therefore grant Defendant's motion to amend and deny Plaintiff's motion to strike.

Thus, we move on to determine whether Defendant's statutory arguments are preserved. Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure states, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Here, the proposed judgments included in the appendices subject to the motion to amend are partially premised on Defendant's interpretation of sections 42-36.2 and 42-25.9, citing them expressly. Thus, since Defendant submitted a "motion[] stating the specific grounds for the

ruling the party desired the court to make," N.C. R. App. P. 10(a)(1), Defendant's statutory arguments are preserved for our review on appeal.

Having dealt with the record and preservation issues, we address the statutory issue pertaining to the application of sections 42-36.2 and 42-25.9 here. Although we address this in the context of a finding of fact, we review statutory interpretation de novo. *In re J.S.*, 374 N.C. 811, 818, 845 S.E.2d 66, 73 (2020) ("We are obliged to apply the appropriate standard of review to a finding of fact or conclusion of law, regardless of the label which it is given by the trial court." (citation omitted)); *Savage v. N.C. Dep't of Transp.*, 388 N.C. 196, 200, 919 S.E.2d 144, 147 (2025) ("This Court has long held that 'questions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo.'" (quoting *In re Summons Issued to Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009)). We agree with both parties "[w]here the statute's language is clear and unambiguous, courts must construe it using its plain meaning," *Cohane v. Home Missioners of Am.*, 387 N.C. 1, 8, 911 S.E.2d 43, 48 (2025) (quoting *State v. Borum*, 384 N.C. 118, 124, 884 S.E.2d 668, 673 (2023)), for this is the primary way to divine the General Assembly's intent, *see Jackson v. Home Depot U.S.A., Inc.*, 388 N.C. 109, 114–15, 919 S.E.2d 199, 204 (2025) ("When construing a statute, we first examine the plain words of the statute because the text of the statute is the best indicia of legislative intent." (quoting *Sturdivant v. N.C. Dep't of Pub. Safety*, 386 N.C. 939, 944, 909 S.E.2d 483, 488 (2024)).

Section 42-36.2(b)[3] provides,

> Except for the disposition of manufactured homes and their contents as provided in [N.C. Gen. Stat. §§] 42-25.9(g) and [] 44A-2(e2), within seven days of the landlord's being placed in lawful possession by execution of a writ of possession and upon the tenant's request within that seven-day period, the landlord shall release possession of the property to the tenant during regular business hours or at a time agreed upon. During the seven-day period after being placed in lawful possession by execution of a writ of possession, a landlord may move for storage purposes, but shall not throw away, dispose of, or sell any items of personal property remaining on the premises unless otherwise provided for in this Chapter. If, after being placed in lawful possession by execution of a writ, the landlord has offered to release the tenant's property and the tenant fails to retrieve such property during the landlord's regular business hours within seven days after execution of the writ, *the landlord may throw away, dispose of, or sell the property in accordance with the provisions of [N.C. Gen. Stat. §] 42-25.9(g).* If the tenant does not request release of the property within seven days, all costs of summary ejectment, execution and storage proceedings shall be charged to the tenant as court costs and shall constitute a lien against the stored property or a claim against any remaining balance of the proceeds of a warehouseman's lien sale.

N.C. Gen. Stat. § 42-36.2(b) (emphasis added).

Thus, since the statute says "the landlord may throw away, dispose of, or sell the property in accordance with the provisions of [N.C. Gen. Stat. §] 42-25.9(g)" we look to section 42-25.9(g), which states,

> *Seven days after being placed in lawful possession by*

---

[3] Of note, section 42-36.2(b) partially deals with storage of tenant property by a sheriff, which is not at issue here.

*execution of a writ of possession, a landlord may dispose of personal property remaining on the premises in accordance with the provisions of this section and [N.C. Gen. Stat. §] 42-36.2(b). . . .* During the seven-day period after being placed in lawful possession by execution of a writ of possession, a landlord may move for storage purposes, but shall not throw away, dispose of, or sell any items of personal property remaining on the premises unless otherwise provided for in this Chapter. Upon the tenant's request prior to the expiration of the seven-day period, the landlord shall release possession of the property to the tenant during regular business hours or at a time agreed upon. If the landlord elects to sell the property at public or private sale, the landlord shall give written notice to the tenant by first-class mail to the tenant's last known address at least seven days prior to the day of the sale. The seven-day notice of sale may run concurrently with the seven-day period which allows the tenant to request possession of the property. The written notice shall state the date, time, and place of the sale, and that any surplus of proceeds from the sale, after payment of unpaid rents, damages, storage fees, and sale costs, shall be disbursed to the tenant, upon request, within seven days after the sale, and will thereafter be delivered to the government of the county in which the rental property is located. Upon the tenant's request prior to the day of sale, the landlord shall release possession of the property to the tenant during regular business hours or at a time agreed upon. The landlord may apply the proceeds of the sale to the unpaid rents, damages, storage fees, and sale costs. Any surplus from the sale shall be disbursed to the tenant, upon request, within seven days of the sale and shall thereafter be delivered to the government of the county in which the rental property is located.

N.C. Gen. Stat. § 42-25.9(g) (emphasis added).

The provisions of section 42-25.9 provide for specific disposal of tenant property to balance the property rights of the landlord and tenant. Section 42-25.9(d) provides

if a tenant "abandons personal property of [$750.00] value or less in the demised premises, or fails to remove such property at the time of execution of a writ of possession in an action for summary ejectment" the landlord may deliver the property to a nonprofit organization so long as the nonprofit provides notice and 30 days for the tenant to retrieve their property. N.C. Gen. Stat. § 42-25.9(d). If the tenant property left on the premises is less than $500.00 "at the time of execution of a writ of possession in an action for summary ejectment . . . , the property shall be deemed abandoned five days after the time of execution, and the landlord may throw away or dispose of the property." N.C. Gen. Stat. § 42-25.9(h). As quoted above, section 42-25.9(g) allows the sale of the tenant's property with seven days' notice to the tenant with "surplus of proceeds from the sale, after payment of unpaid rents, damages, storage fees, and sale costs, shall be disbursed to the tenant, upon request, within seven days after the sale, and will thereafter be delivered to the government of the county in which the rental property is located." N.C. Gen. Stat. § 42-25.9(g). Furthermore, if the statutory provisions are not followed by the landlord, section 42-25.9 provides,

> (b) If any lessor, landlord, or agent seizes possession of or interferes with a tenant's access to a tenant's or household member's personal property in any manner not in accordance with [N.C. Gen. Stat. §§] 44A-2(e2), 42-25.9(d), 42-25.9(g), 42-25.9(h), or [] 42-36.2 the tenant or household member shall be entitled to recover possession of his personal property or compensation for the value of the personal property, and, in any action brought by a tenant or household member under this Article, the landlord shall

> be liable to the tenant or household member for actual damages, but not including punitive damages, treble damages or damages for emotional distress.
>
> (c) The remedies created by this section are supplementary to all existing common-law and statutory rights and remedies.

N.C. Gen. Stat. § 42-25.9(b)-(c).

Defendant argues Plaintiff's property was abandoned, citing section 42-25.9(d) and (h), but the statutory provisions delineate between abandonment of property and property not retrieved after the seven-day period for higher valued property value totals.[4] Here, as found in unchallenged Findings of Fact 31, 33-35, and 51, Plaintiff was actively contacting Defendant's son within the seven-day period, actively attempting to remove his property with a total value much greater than $750.00 from the Farm, was inhibited by his injury and adverse weather conditions, and asked for at least a two-day extension to complete removing his property from the Farm, according to text messages included in the record. Thus, the statutory provisions cited by Defendant to support her abandonment argument are inapplicable to the

---

[4] *Compare* N.C. Gen Stat. § 42-25.9(d) ("If any tenant *abandons* personal property of [$750.00] value or less in the demised premises, *or fails to remove* such property at the time of execution of a writ of possession in an action for summary ejectment. . . . (emphases added)) *and* N.C. Gen. Stat. § 42-25.9(e) (2025) ("For purposes of subsection (d), personal property shall be deemed abandoned if the landlord finds evidence that clearly shows the premises has been voluntarily vacated after the paid rental period has expired and the landlord has no notice of a disability that caused the vacancy. A presumption of abandonment shall arise 10 or more days after the landlord has posted conspicuously a notice of suspected abandonment both inside and outside the premises and has received no response from the tenant."), *with* N.C. Gen. Stat. § 42-25.9(h) (stating if the total value of the tenant property is $500.00 or less "the property shall be deemed abandoned five days after the time of execution, and the landlord may throw away or dispose of the property").

facts at hand, much less do they support Plaintiff's abandonment of his property. Rather, section 42-25.9's text reflects the General Assembly's intent, *see Jackson*, 388 N.C. at 114–15, 919 S.E.2d at 204, for tenants to retain their property or its value, if they act reasonably and expeditiously to recover their property while also granting landlords options for disposing of the property, depending on its value, without incurring unnecessary expense or an unreasonable timeframe.[5] Thus, based on the facts of this case, on top of the Defendant's initial interference with Plaintiff's attempts to remove his property from the Farm during the lease extension discussed in the first issue, the trial court found unchallenged Findings of Fact 31 and 33-36, which found Plaintiff notified Defendant's son within the seven-day period, but was inhibited from retrieving his property by adverse weather and his health. Further, upon requesting a limited extension to complete removing his property due to the extenuating circumstances, Defendant trespassed Plaintiff, shut off communication with him, and, according to unchallenged Finding of Fact 42 "has refused to allow

---

[5] *See* N.C. Gen. Stat. § 42-25.9(g) (stating a landlord may sell tenant property after seven-day notice which can run concurrent with the seven-day period after the writ of possession, and *after* that notice period "any surplus of proceeds from the sale, after payment of unpaid rents, damages, storage fees, and sale costs, shall be disbursed to the tenant, upon request, within seven days after the sale, and will thereafter be delivered to the government of the county in which the rental property is located"); *see also* N.C. Gen. Stat. § 42-25.9(d) (stating "the landlord may, as an alternative to the procedures provided in [sections] 42-25.9(g), 42-25.9(h), or 42-36.2, deliver the property[, totaling $750.00 or less in value,] into the custody of a nonprofit organization regularly providing free or at a nominal price clothing and household furnishings to people in need" so long as the organization provides thirty-day notice to the tenant to retrieve his or her property); N.C. Gen. Stat. § 42-25.9(h) (deeming tenant property abandoned and able to be "throw[n] away or dispose[d] of" five days after the execution of a writ of possession if the total value of the tenant property is less than $500.00).

Plaintiff to remove his personal property from the [Farm.]" Thus, the findings of fact indicate Defendant interfered with Plaintiff's ability to move his property during the lease extension, and moreover, refused to cooperate with Plaintiff when circumstances outside either party's control delayed Plaintiff's retrieval of his property, entitling Plaintiff "to recover possession of his personal property or compensation for the value of the personal property" and deeming "the landlord . . . liable to the tenant . . . for actual damages, but not including punitive damages, treble damages or damages for emotional distress" "supplementary to all existing common-law and statutory rights and remedies." N.C. Gen. Stat. § 42-25.9(b), (c).

Therefore, the trial court did not err in finding "[b]ecause of Defendant's actions described herein or the actions of Defendant's behalf, Plaintiff was dispossessed of the items of personal property described in Paragraph Numbers 51 and 52, preceding, without valid cause or excuse" in Finding of Fact 55.

## C. Finding of Fact 56

Third, Defendant argues "[t]he trial court erred in finding as a fact (Number 56) that that [sic] because of Defendant's actions Plaintiff was damaged in the amount of $45,584.00." In support of her argument, Defendant states there is no competent evidence to support the finding because the trial court "provides no basis" for its calculation of the damages; Plaintiff testified he was unsure of the damages amount;

and the only evidence Plaintiff put forth was "what he purchased the equipment for, or claimed its value on insurance forms" prior to the ejectment. We agree in part.[6]

"For a conversion claim, damages are determined by the 'fair market value of the converted property at the time of the conversion, plus interest.'" *Heaton-Sides v. Snipes*, 233 N.C. App. 1, 5, 755 S.E.2d 648, 651 (2014) (quoting *Bartlett Milling Co., v. Walnut Grove Auction & Realty Co.,* 192 N.C. App. 74, 81, 665 S.E.2d 478, 485 (2008)). For unjust enrichment, the measure of damages "is the reasonable value of the goods and services to the defendant." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988) (citation omitted). For personal property, the measure of damages "is the difference between the market value of the damaged property immediately before and immediately after the injury." *Carolina Power & Light Co. v. Paul*, 261 N.C. 710, 710–11, 136 S.E.2d 103, 104 (1964). "According to well-established North Carolina law, a party seeking to recover damages bears the burden of proving the amount that he or she is entitled to recover in such a manner as to allow the finder of fact to calculate the amount of damages that should be awarded to a reasonable degree of certainty." *Lacey v. Kirk*, 238 N.C. App. 376, 392, 767 S.E.2d 632, 644 (2014) (citing *Beroth Oil Co. v. Whiteheart,* 173 N.C. App. 89, 95, 618 S.E.2d 739, 744 (2005)). "In so doing, 'absolute certainty is not required but evidence of damages must be sufficiently specific and complete to permit the [fact finder] to arrive

---

[6] We hold the loss of use issue is not preserved on appeal as discussed further in the seventh issue relating to Conclusion of Law 15 and therefore do not address it.

at a reasonable conclusion.'" *Van-Go Transp., Inc. v. Sampson Cnty.*, 254 N.C. App. 836, 845, 803 S.E.2d 215, 221 (2017) (quoting *Fortune v. First Union Nat'l Bank*, 323 N.C. 146, 150, 371 S.E.2d 483, 485 (1988)). "[The trial court's findings of fact] must be the specific ultimate facts sufficient for the appellate court to determine the judgment is adequately supported by competent evidence. Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (citation modified); *see* N.C. Gen. Stat. § 1A–1, Rule 52(a)(1) (2025).

Defendant does not contest Finding of Fact 51, in which the trial court found the values of Plaintiff's structures and equipment on the Farm at the time Plaintiff was evicted based on exhibits presented at trial by Plaintiff, including a property insurance valuation sheet and documents pertaining to the purchase of the Farm Tech structures, New Holland NH 170 skid steer loader, and Caterpillar track loader. Thus, as Finding of Fact 51 goes unchallenged, it is binding upon this Court. *See State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) ("[W]hen, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." (citing *State v. Baker,* 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984))). The trial court received Plaintiff's testimony and exhibits at trial as to the amount paid for his property on the Farm, as well as Plaintiff's improvements to certain equipment, Plaintiff's valuation of specific equipment as of 2019, Plaintiff's January 2024 valuation of $41,000 worth of

equipment on the Farm, and testimony and photographs demonstrating the state of the equipment around the time of ejectment. Further, Defendant testified Plaintiff's equipment had remained on the Farm unmoved for approximately five years, with some equipment beginning to deteriorate.

This evidence, and in particular Finding of Fact 51, provides sufficient competent evidence for the trial court to find $45,584.00 in damages for conversion and unjust enrichment. The total of Finding of Fact 51(b)–(e), (g), (i)–(n) add up to an amount greater than the $45,584.00 damages awarded but are "sufficiently specific and complete to permit the [trial court] to arrive at a reasonable conclusion," *Van-Go Transp., Inc.*, 254 N.C. App. at 845, 803 S.E.2d at 221 (internal citation and marks omitted), of $45,584.00 based on the evidence heard at trial establishing the approximate values, improvements, and conditions of the equipment on the Farm at the approximate time of ejectment and subsequent ejectment even if "there is evidence to the contrary," *Sisk*, 364 N.C. at 179, 695 S.E.2d at 434.

However, apart from what Plaintiff paid for the equipment, what he valued it for insurance, photos of the equipment, and testimony as to deterioration of the equipment in general, no evidence can be found in the record "sufficiently specific and complete to permit the [trial court] to arrive at a reasonable conclusion," *Van-Go Transp., Inc.*, 254 N.C. App. at 845, 803 S.E.2d at 221 (internal citation and marks omitted), as to amount of damages for depreciation, nor do any other findings of fact provide such specific information. The issue is not whether there was depreciation

or not, the issue is whether there was competent evidence to calculate "the difference between the market value of the damaged property immediately before and immediately after the injury." *Carolina Power & Light Co.*, 261 N.C. at 710–11, 136 S.E.2d at 104. Unchallenged Finding of Fact 50 found Plaintiff's equipment remained "outside, exposed to the weather; and Defendant made no effort to protect that equipment or property from the elements," and Finding of Fact 51 provides what Plaintiff paid for the equipment left at the Farm and what he now values it at, but neither of these provide any specific amounts, totals, or calculations as to the fair market value before ejectment to the trial in 2024. In fact, solely judging by Finding of Fact 51, a couple pieces of equipment have increased in value from what Plaintiff paid to what he valued them at in his 2024 insurance valuation.

Thus, while Finding of Fact 56 on its own is supported by sufficient competent evidence for unjust enrichment and conversion, these were not the bases of the trial court's award for damages. Because there is no competent evidence sufficiently supporting "the difference between the market value of [Plaintiff's property] immediately before" ejectment and the value at trial, *Carolina Power & Light Co.*, 261 N.C. at 710–11, 136 S.E.2d at 104, Finding of Fact 56 does not support damages for depreciation. Therefore, the trial court erred in finding Finding of Fact 56 as no competent evidence included in the record supports the trial court's calculations for damages for depreciation.

**D. Conclusion of Law 5**

Fourth, Defendant argues "[t]he trial court erred in concluding as a matter of law (Number 5) that Defendant converted Plaintiff's equipment to her own use and benefit to damage and detriment of Plaintiff." In support, Defendant argues "Plaintiff was properly ejected from Defendant's property and had an opportunity to remove his property prior to 19 August 2019," and "there is no finding of fact to support the [trial c]ourt's conclusion of law that 'Defendant converted Plaintiff's equipment to her own use and benefit' and there is no evidence in the record that she did so."

"The tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (citation modified). "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012).

Here, unchallenged Finding of Fact 51 details Plaintiff's equipment on the Farm at the time of his eviction. As found in Finding of Fact 27 and unchallenged Findings of Facts 23-24, 33-36, Defendant or those acting on her behalf interfered with Plaintiff and those assisting him from removing his personal property prior to the lease extension's end and afterward, despite agreement between Plaintiff and Defendant's son for Plaintiff to remove his personal property from the Farm in the

seven days following eviction, which was interrupted by adverse weather conditions. Thus, because of Defendant's interference with Plaintiff's attempt to remove his property from the Farm, his personal property wrongfully remained on the Farm after eviction in Defendant's possession. Therefore, the findings of fact support the trial court's conclusion of conversion.

However, Defendant is correct no evidence supports "Defendant converted Plaintiff's equipment *to her own use and benefit*." But the phrase "to her own use and benefit" is immaterial to the legal conclusion of conversion. *See Variety Wholesalers, Inc.*, 365 N.C. at 523, 723 S.E.2d at 747 (describing the two elements of conversion); *Mace v. Pyatt*, 203 N.C. App. 245, 256, 691 S.E.2d 81, 90 (2010) ("The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that [the] defendant derived no benefit from the act." (quoting *Lake Mary Ltd. Part. v. Johnston,* 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (2001))). Thus, with conversion being supported by the findings of fact, we will not reverse for language that "is mere surplusage and is not necessary to support the judgment." *Swygert v. Swygert*, 46 N.C. App. 173, 180, 264 S.E.2d 902, 907 (1980).

## E. Conclusion of Law 4

Fifth, Defendant argues "[t]he trial court erred in concluding as a matter of law (Number 4) that [Plaintiff] was unable to remove his equipment from

[Defendant]'s property within seven (7) days of the writ of possession being served due to adverse weather conditions."[7] Specifically, Defendant argues this "appears to be more of a finding of fact" and section "42-36.2(b) is clear that the tenant has seven days to retrieve any personal property after being served with a Writ of Possession." We disagree.

First, as discussed in the second issue pertaining to Finding of Fact 55, the trial court did not err in granting Plaintiff thirty days to recover his property pursuant to sections 42-36.2(b) and 42-25.9(b)-(c),(g). Second, as a finding of fact, we are bound by unchallenged Finding of Fact 33, in which the trial court found "[t]he Plaintiff's plans for removal of his property from the premises within seven days of the writ of possession were interrupted by adverse weather conditions." Therefore, the trial court did not err in Conclusion of Law 4.

## F. Conclusion of Law 8

Sixth, Defendant argues "[t]he trial court erred in concluding as a matter of law (Number 8) that Defendant was unjustly enriched by retaining Plaintiff's equipment after she trespassed [] Plaintiff in August 2019."

---

[7] The whole of Conclusion of Law 4 says, "[N.C. Gen. Stat. §] 42-25.9(g) allows the tenant to request release of personal property left on the premises after execution of a Writ of Possession within seven (7) days, but the statute is not clear as to the consequence of tenant failing to remove all of its property within the seven (7) days after giving notice. Plaintiff provided timely notice of his plan to remove his property from the subject premises and Defendant (or persons on her behalf) agreed to Plaintiff's plan. Because of adverse weather conditions, and Plaintiff's health issues, Plaintiff was unable to complete the removal of his property from the subject premises within seven days of the notice of writ of possession."

"Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Jessey Sports, LLC v. Intercollegiate Men's Lacrosse Coaches Ass'n, Inc.*, 289 N.C. App. 166, 171, 888 S.E.2d 677, 681 (2023) (quoting *Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC*, 226 N.C. App. 483, 490, 742 S.E.2d 555, 561 (2013)); *see Butler v. Butler*, 239 N.C. App. 1, 7, 768 S.E.2d 332, 336 (2015) (listing the same substantive elements in greater length).

Here, Plaintiff conferred the rent money on Defendant for rent through 1 May 2019 with Defendant aware acceptance of the rental payment constituted an extension of the lease through 1 May 2019 as found in unchallenged Findings of Fact 13–15. Despite this extension, Defendant began renting 50 acres of Farm still under Plaintiff's lease in February 2019 to another individual without informing Plaintiff as found in unchallenged Finding of Fact 19. Further, as found in Finding of Fact 27 and unchallenged Findings of Facts 23–24 and 33–36, Defendant or those acting on her behalf obstructed Plaintiff and those assisting him from removing his personal property from the Farm both during his lease extension and after the seven-day window, during which Plaintiff and Defendant's son had agreed on Plaintiff removing his remaining property, which was disrupted by adverse weather conditions. Thus, as found in Finding of Fact 55, dispossessing Plaintiff of his personal property noted in unchallenged Findings of Fact 51 and 52.

Therefore, by accepting Plaintiff's rent to extend the lease and subsequently interfering with Plaintiff's use of the Farm and attempted removal of his equipment, forcing Plaintiff's equipment to be left on the Farm at the conclusion of the extension and ejectment, the findings of fact are sufficient to support the conclusion Defendant was unjustly enriched by her actions. *See Butler*, 239 N.C. App. at 7, 768 S.E.2d at 336 (describing unjust enrichment as "the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor" (quoting *Watson Elec. Constr. Co. v. Summit Cos., LLC,* 160 N.C. App. 647, 652, 587 S.E.2d 87, 92 (2003))).

## G. Conclusion of Law 15

Seventh, Defendant argues "[t]he trial court erred in concluding as a matter of law (Number 15) that Plaintiff was damaged in the amount of $45,584.00 for depreciation and loss of use of his equipment." In support, Defendant argues "Plaintiff did not plead a claim for depreciation or offer any evidence of depreciation at trial and there are no findings of fact that support this conclusion of law." Further, Defendant argues "Plaintiff also did not plead a claim for loss of use of his equipment." We agree in part.

"Under the Rules of Civil Procedure, a complaint must 'contain . . . [a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief.'"

*Howell v. Cooper*, 388 N.C. 71, 77, 919 S.E.2d 212, 218 (2025) (alteration in original) (quoting N.C. Gen. Stat. § 1A-1, Rule 8(a)(1) (2025)). "The Rules do not require hyper-technical, formulaic pleading." *Id.* (citing *Stanback v. Stanback*, 297 N.C. 181, 204, 254 S.E.2d 611, 626 (1979)). Furthermore, "[u]nder [Rule] 15(b)[,] the rule of 'litigation by consent' is applied when [n]o objection is made on the specific ground that the evidence offered is not within the issues raised by the pleadings." *Roberts v. William N. & Kate B. Reynolds Mem'l Park,* 281 N.C. 48, 58, 187 S.E.2d 721, 726 (1972); N.C. Gen. Stat. § 1A-1, Rule 15(b) (2025) ("When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). To preserve an issue on appeal "a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a).

Here, in paragraph 41 of Plaintiff's complaint under the claim for negligence, Plaintiff pled,

> *That Defendant, by her actions and that of her agent(s), failed to exercise due and reasonable care to protect and safeguard property* and crops of [] Plaintiff, and Defendant was negligent, in that she allowed her agent to spray herbicide on growing crops of [] Plaintiff, without due and reasonable regard for the affect thereof. Defendant further, by actions of her agent(s), *undertook activities on the premises without due regard for the property of Plaintiff and damaged valuable equipment of Plaintiff.*

(Emphasis added).

These "short and plain statement[s] of the claim [were] sufficiently particular to give the court and the parties notice of," *Howell,* 388 N.C. at 77, 919 S.E.2d at 218 (quoting N.C. Gen. Stat. § 1A-1, Rule 8(a)(1)), depreciation. *See* Depreciation, *Black's Law Dictionary* (12th ed. 2024) ("A reduction in the value or price of something; specif., a decline in an asset's value because of use, wear, obsolescence, or age."). Additionally, for loss of use, although not included in the complaint, at trial, when asked by his counsel if Plaintiff was "asking for loss of use of [his] equipment," Plaintiff responded, "[a]bsolutely," with no objection from Defendant. Thus, pursuant to Rule 15(b), loss of use is, by implied consent, "treated in all respects as if they had been raised in the pleadings." N.C. Gen. Stat. § 1A-1, Rule 15(b). However, because Defendant never "presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context," N.C. R. App. P. 10(a), pertaining to loss of use, only raising this issue for the first time on appeal, the loss of use issue is not preserved on appeal. Thus, we will not proceed further with any review of loss of use.

As discussed in the third issue pertaining to Finding of Fact 56, neither the findings of fact nor the evidence in record sufficiently support the $45,584.00 for

depreciation in whole or part.[8] The issue is not the conclusion Plaintiff's property depreciated, for unchallenged Finding of Fact 50 is sufficient to support the conclusion depreciation occurred; rather, the error is nothing in the findings of facts supports the calculation of damages to be $45,584.00 for depreciation in whole or part. *See Carolina Power & Light Co.*, 358 N.C. at 517, 597 S.E.2d at 721 ("Conclusions of law drawn by the trial court from its findings of fact are reviewable de novo on appeal."); *Carolina Mulching Co. LLC*, 272 N.C. App. at 245, 846 S.E.2d at 544 ("The trial court is required to set forth the 'specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.'" (citation omitted)). Therefore, we hold the court erred in Conclusion of Law 15 with respect to its calculation of damages for depreciation.

**H. Thirty Days to Remove Property**

Eighth, Defendant argues "[t]he trial court erred in ordering that Plaintiff was allowed a period of thirty (30) days from the entry of the judgment to remove his personal property listed in paragraphs 51 and 52 of the judgment from Defendant's property." In support, Defendant repeats her section 42-36.2 argument from the second issue and argues her son's and Plaintiff's messages from 13-16 and 18 August 2019 where Defendant's son acceded to Plaintiff's retrieving his property shows

---

[8] We do not know how this total is split between depreciation and loss of use because of the lack of specific findings of fact.

"[t]here is no evidence in the record that Defendant did anything that would have prevented Plaintiff from being able to remove his property during that time so, presumably, this comes from the [trial c]ourt's [Conclusion of Law 4]." Having rejected her argument in the second issue and held the trial court did not err in Finding of Fact 55, as well as in Conclusion of Law 4, and together with Findings of Fact 23, 24, 27, and Conclusion of Law 3, we hold the trial court did not err in ordering "[P]laintiff was allowed a period of thirty (30) days from the entry of the judgment to remove his personal property listed in paragraphs 51 and 52 of the judgment from [D]efendant's property." *See* N.C. Gen. Stat. § 42-25.9(b)-(c).

## I.  $45,584.00 Judgment

Ninth, Defendant argues "[t]he trial court erred in entering a judgment against [D]efendant and in favor of [P]laintiff for $45,584.00 for depreciation and loss of use of his equipment." Defendant incorporates her argument from the eighth issue. While we hold the trial court is within its statutory bounds in awarding damages for depreciation and loss of use, *see* N.C. Gen. Stat. § 25-36.9 (b)-(c), as we held in the third and seventh issues, relating to Finding of Fact 56 and Conclusion of Law 15, there are no specific findings of fact sufficient nor competent evidence present in the record to uphold the amount awarded for depreciation. Therefore, we vacate solely the $45,584.00 judgment for depreciation. *See Carolina Mulching Co. LLC*, 272 N.C. App. at 246, 846 S.E.2d at 544 ("Evidence must support findings; findings must support conclusions; conclusions must support the judgment, each link in the chain

of reasoning must appear in the order itself." (citation modified)). However, because the loss of value claim was not preserved on appeal, we remand to the trial court solely to find the amount in damages only for Plaintiff's loss of use.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's judgment ordering Plaintiff be allowed a period of thirty days to remove his personal property listed in findings of fact 51 and 52, vacate the trial court's determination of damages, and remand the trial court's award of damages solely for loss of use to be recalculated in light of our holding there to be no competent evidence for damages for depreciation.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges MURRY and FREEMAN concur.

Report per Rule 30(e).